**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PENICK CORPORATION,<br>33 Industrial Park Road,<br>Pennsville, NJ  08070<br>    Plaintiff,<br><br>   v.<br><br>ALBERTO R. GONZALES,<br>in his official capacity as<br>Attorney General of the United States, and<br><br>UNITED STATES DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530, and<br><br>KAREN P. TANDY, in her official<br>Capacity as Administrator of the<br>United States Drug Enforcement<br>Administration, and<br><br>UNITED STATES DRUG<br>ENFORCEMENT ADMINISTRATION<br>2401 Jefferson Davis Highway<br>Alexandria, VA  22301<br><br>    Defendants. | CIVIL ACTION NO.:_____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Penick Corporation ("Penick") files the following Complaint seeking mandatory injunctive relief and declaratory relief, and states as follows:

## Introduction

1.     This is an action for injunctive and declaratory relief to reverse decisions by the United States Drug Enforcement Administration ("DEA") (1) canceling hearings on two separate applications, one filed by Rhodes Technologies ("Rhodes") and the other by Cody Laboratories Inc. ("Cody"), for DEA registration to import controlled substances known as narcotic raw materials ("NRMs"), (2) limiting the entities that are entitled to submit comments, objections, and requests for hearings on applications to import NRMs, and (3) announcing that DEA is not required to publish notice of the applications to import NRMs in the Federal Register.  The unilateral and abrupt cancellation of these hearings deprived Penick of its right to present comments on or objections to these registrations, and also abrogated Penick's right to request and participate in hearings related to both the Cody and Rhodes registration applications.

2.     DEA's unilateral and arbitrary decisions violate the letter and long-standing implementation of its own regulations.  DEA regulations require the publication of notices of importer applications in the Federal Register.  By longstanding application of this same rule, DEA has long allowed importers and bulk manufacturers of products made from the NRMs such as Penick to request and participate in hearings on the importer registration applications of other potential NRM importers.  Importantly, DEA now ignores its own rules and practice and has done so without providing for notice and comment rulemaking.  This violates the Administrative Procedure Act, 5 U.S.C. §§ 701-706, as well as Penick's fundamental rights under the 5th Amendment of Constitution of the United States.  Because the DEA's actions abrogate Penick's fundamental and constitutionally-protected rights, are arbitrary and capricious, and exceed its authority, Penick has suffered (and will continue to suffer) irreparable injury.

**Parties**

3. Penick is a Delaware corporation with its principal place of business located in New Jersey. Penick and its predecessor company have been in the business of processing NRMs and bulk manufacturing active pharmaceutical ingredients ("APIs") for more than five decades. It is registered by the DEA as an importer of NRMs. Penick is one of only a small number of U.S. based companies with long-term investment in the technology and physical plants necessary for this importation, plus a history of licensure to import opiate raw materials for conversion to APIs. Penick is also registered by DEA as a bulk manufacturer to produce a full range of opiate/opioid APIs from opium, poppy straw and concentrate of poppy straw ("CPS").

4. Defendant Alberto R. Gonzales is the Attorney General of the United States. Pursuant to 21 U.S.C. §§ 952 and 958, he is charged with enforcing federal law and regulations relating to the importation of controlled substances. He is sued in his official capacity.

5. Defendant United States Department of Justice, through the United States Drug Enforcement Administration, is delegated the responsibility to regulate the importation of controlled substances in the United States.

6. Defendant Karen P. Tandy is the Administrator of the Drug Enforcement Administration, and is delegated authority to administer a program of registration and permits relating to the importation of controlled substances. She is sued in her official capacity.

7. Defendant United States Drug Enforcement Administration, part of the United States Department of Justice, is the federal agency primarily responsible for implementing regulations relating to the importation and distribution of controlled substances in the United States.

**Jurisdiction and Venue**

8. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1346 as the claims raised in this Complaint arise under 21 U.S.C. §§ 952 and 958; the Administrative Procedure Act (5 U.S.C. §§ 701-706); and the Fifth Amendment of the United States Constitution.[1]

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**DEA Regulation of the Importation of Controlled Substances**

10. The Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, provides statutory authority for the DEA to control against the illicit distribution of certain drugs ("controlled substances").

11. Among the measures the CSA mandates is that DEA take control over the illicit distribution of controlled substances by registering all importers of certain controlled substances.

12. NRMs are controlled substances classified into "Schedule II" and are subject to the registrations and restrictions imposed on Schedule II controlled substances.

13. In order to receive a registration, an applicant must establish that its registration is both necessary and consistent with the public interest.

14. In 1971, following notice and comment rulemaking, DEA promulgated regulations requiring applications for importer registration to be published in the Federal Register in order to give bulk manufacturers and applicants for bulk manufacturer registrations the opportunity to comment on, object to, or request a hearing on the importer applicant's registration. *See* 36 Fed. Reg. 7814 (April 24, 1971).

---

[1] Because there is a split in authority as to whether the United States District Courts or the United States Courts of Appeals have jurisdiction over the claims that Penick raises here, in order to fully preserve its rights, Penick has also filed a Petition for Review of Defendants' orders of January 25, 2007 and February 1, 2007 in the United States Court of Appeals for the District of Columbia Circuit.

15. DEA has followed a long-standing policy of refusing to issue bulk manufacturing registrations for the manufacture of NRMs within the United States. In addition, DEA does not permit the importation and resale of NRMs (other than for research purposes) and thus importers have been required to process or manufacture the imported NRMs prior to the sale of what has been processed or manufactured.

16. In the absence of bulk manufacturers who might provide information on DEA's decision to grant or deny an importer's registration, DEA has allowed three groups to comment on, object to, and request and participate in hearings on the applications of potential importers: (1) those entities holding importer registrations, (2) those holding bulk manufacturing registrations to manufacture APIs from the NRMs sought to be imported, and (3) applicants for such registrations.

17. According to calculations of a DEA Administrative Law Judge, the DEA has followed this policy at least twenty times over the past ten years.

18. The DEA has repeatedly defended and maintained its policy of allowing importers the right to comment, object, and request and participate in hearings on new applications, including when Penick itself attacked this policy when applying for a registration.

### The DEA's Notice of Application of Cody

19. On January 23, 2006, the DEA published a notice on Cody's application for a DEA importer registration in the Federal Register. *See* 71 Fed. Reg. 3545-01, 3545-02 (Jan. 26, 2006). That notice of application announced that Cody had applied for registration as an importer of raw opium (9600), poppy straw (9650) and CPS (9670), all Schedule II controlled substances. *Id*. That notice also stated that "[p]ursuant to 21 U.S.C. 958(i), the Attorney General shall, prior to issuing a registration under this Section to a bulk manufacturer of a controlled

substance in Schedule I or II and prior to issuing a regulation under 21 U.S.C. 952(a)(2)(B) authorizing the importation of such a substance, provide manufacturers holding registrations for the bulk manufacture of the substance an opportunity for a hearing." *Id*. It continued: "Any manufacturer who is presently, or is applying to be, registered with DEA to manufacture [raw opium (9600), poppy straw (9650) and concentrate of raw poppy straw (9670)] may file comments and objections to the issuance of the proposed registration and may … file a written request for a hearing on such application …." *Id*.

### The DEA's Notice of Application of Rhodes

20. On April 21, 2006, the DEA published a similar notice on Rhodes's application for DEA importer registration in the Federal Register. *See* 71 Fed. Reg. 20729-03 (Apr. 21, 2006). That notice of application announced that Rhodes had applied to be registered as an importer of raw opium (9600) and concentrate of poppy straw (9670), both Schedule II controlled substances. *Id*. That notice also stated that "pursuant to 21 U.S.C. 958(i), the Attorney General shall, prior to issuing a registration under this Section to a bulk manufacturer of a controlled substance in Schedule I or II and prior to issuing a regulation under 21 U.S.C. 952(a)(2)(B) authorizing the importation of such a substance, provide manufacturers holding registrations for the bulk manufacture of the substance an opportunity for a hearing." *Id*. It continued: "Any manufacturer who is presently, or is applying to be, registered with DEA to manufacture [raw opium (9600) and concentrate of poppy straw (9670)] may file comments or objections to the issuance of the proposed registration and may … file a written request for a hearing on such application …." *Id*.

### Penick Requests Hearings on Cody's Application and on Rhodes's Application

21. By letter dated February 21, 2006, Penick submitted comments, objections and a request for hearing on the Cody application based on the fact that Penick was (and is) an

6

importer of the NRMs that Cody had requested to import, and is a bulk manufacturer of the APIs made from the NRMs that Cody had requested to import. Like Penick, two other companies — Mallinckrodt Inc. and Noramco, Inc .— also submitted comments and objections and requests for a hearing on Cody's application.

22.     DEA proceeded with the Cody hearing, as it had consistently done in the past. An administrative law judge was assigned to the case, and initial memoranda were filed. Indeed, all written testimony had been submitted and the oral phase of the hearing had been scheduled to start in February 2007.

23.     The same procedure was followed in the Rhodes matter. By letter dated May 18, 2006, Penick submitted comments, objections, and a request for a hearing on the Rhodes application based on the fact that Penick was (and is) an importer of both of the controlled substances that Rhodes had requested to import. Once again, Mallinckrodt Inc. and Noramco, Inc. did likewise.

24.     Again, DEA proceeded with the hearing. The same administrative law judge was assigned to this case and initial memoranda were filed, although this case had not yet proceeded to the submission of testimony.

25.     Penick has a significant interest in both the Rhodes and Cody applications because, *inter alia,* (1) Penick has experience as a registered importer of raw opium, poppy straw and CPS; and (2) Penick has extensive history as a registered bulk manufacturer of various controlled substances, including cocaine, codeine, dihydrocodeine, oxycodone, hydromorphone, ecgonine, hydrocodone, morphine, thebaine, and oxymorphone. As such, Penick is concerned with assuring, *inter-alia*:

      (a)    that there is an adequate and uninterrupted supply of NRMs for medical, scientific, and other legitimate purposes under adequately competitive conditions; and

      (b)    that the domestic system of regulatory controls against diversion remains stable and unimpaired.

26. Because of these interests and concerns, Penick requested hearings on both the Cody and Rhodes importer applications in order to be heard and to demonstrate that each of these applications should be denied for two independent reasons. First, neither Cody nor Rhodes could carry its burden of proving that its importation of the NRMs is "necessary" under 21 U.S.C. § 952(a)(1). Second, neither Cody nor Rhodes could establish that its registration is in the public interest. 21 U.S.C. §§ 823(a) and 958(a).

**For Both the Cody and Rhodes Applications, the DEA Abruptly — and Without Affording Penick an Opportunity for Notice and Comment —
<u>Reversed Its Long-Standing Position That Importers Are Entitled to Hearings</u>**

27. On January 25, 2007, however, DEA — without any notice or time period for notice and comment — fundamentally changed the rules to which Penick and other NRM importers are subject. On that date, DEA issued a self-styled "Correction to Notice of Application" of both the January 23, 2006 notice of Cody's importer application and the April 21, 2006 notice of Rhodes's importer application. *See* 72 Fed. Reg. 3417-19 (Jan. 25, 2007). Those "Corrections" dramatically reversed DEA's long-standing practice.

28. In particular, DEA stated that its April 21, 2006 notice of Rhodes's application "***incorrectly stated*** that 'any manufacturer who is presently, or is applying to be, registered with DEA to manufacture such basic classes of controlled substances may file comments or objections to the issuance of the proposed registration and may … file a written request for a hearing on such application ….'" *Id.* at 3417 (emphasis added).

29. After identifying this supposedly incorrect statement, the DEA continued: "Correctly stated, … the notice of application … should have stated that 'bulk manufacturers' of raw opium or concentrate of poppy straw may file a written request for a hearing. … [S]ince there are no domestic bulk manufacturers of narcotic raw materials registered with DEA, no registrant has the statutory or regulatory right to request a hearing on the application." *Id*. Additionally, that "Correction to Notice" stated that "the DEA is denying [Penick's] requests for hearing and dismissing the case on the agency's administrative docket." *Id*. Further, the DEA also concluded that "applications to import narcotic raw materials, including raw opium and concentrate of poppy straw, *are not required to be published in the Federal Register*." *Id*. (emphasis added). Finally, the DEA also "direct[ed] the ALJ to remove from the [DEA's] administrative docket the hearing on the application of Rhodes Technologies to register as an importer of narcotic raw materials." *Id*.

30. Significantly, DEA expressly conceded that it had previously granted requests for hearings made by entities that were not bulk manufacturers of the NRMs sought to be imported. However, despite its longstanding practice of granting hearings to such persons, DEA abruptly — and without opportunity for notice and comment — reversed that practice: "I now conclude that the most sound reading of the statute and regulations is that which limits the right to a hearing to those situations in which Congress expressly provided such a right." *Id*. The DEA further summarily concluded: "Finding no valid justification for the past practice [of granting hearings to importer registrants, manufacturer registrants of APIs from the NRMs to be imported, and applicants thereof], and finding such practice inconsistent with the particular criteria for a hearing rights [*sic*] set forth in the CSA and implementing regulations, I decline to follow this practice." *Id*. The DEA concluded by denying the requests for a hearing on

9

Rhodes's application, and ordering the Administrative Law Judge administering the hearing to remove the hearing from the DEA's docket and to dismiss the case.

31. Having been ordered to do so, on February 1, 2007, the DEA's Administrative Law Judge cancelled the pending hearing on Rhodes's application and terminated "all proceedings" in the matter of Rhodes's application. *Id*.

32. As in the Rhodes application, the DEA issued a similar "Notice of Correction to Notice of Application" as to the Cody application. *See* 72 Fed. Reg. 3417. In particular, the DEA stated that its January 23, 2006, notice of Cody's application also "*incorrectly stated* that '[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture such basic classes of controlled substances may file comments or objections to the issuance of the proposed registration and may … file a written request for a hearing on such application….'" *Id*. After identifying this supposedly incorrect statement, the DEA continued:

> "*Correctly stated*, …, *the notice of application*, although not required to be published at all, *should have stated that 'bulk manufacturers'* of raw opium, poppy straw, or concentrate of poppy straw *may file a written request for a hearing*. As explained in the Correction to Notice of Application pertaining to Rhodes Technologies published today, *since there are no domestic bulk manufacturers of narcotic raw materials registered with DEA, no registrant has a statutory or regulatory right to a hearing on the application*."

*Id*. (emphasis added). DEA further "direct[ed] the Administrative Law Judge to remove from the agency's administrative docket the hearing on the application of Cody Laboratories, Inc. to be registered as an importer of narcotic raw materials." *Id*.

33. Significantly, the DEA also announced that "applications to import narcotic raw materials, including raw opium, poppy straw, and concentrate of poppy straw, *are not required to be published in the Federal Register." Id.* (emphasis in original).

10

34.     Once again, on February 1, 2007, the DEA's Administrative Law Judge cancelled the pending hearing on Cody's application — the oral phase of which had been scheduled for February 26-March 2, 2007 and March 5-9, 2007.  She also terminated "all proceedings" in the matter of Cody's application.

### COUNT I — INJUNCTIVE RELIEF

35.     Penick incorporates by reference the allegations in paragraphs 1 through 34 as though the same were set forth herein in full.

36.     Pursuant to 21 U.S.C. § 958(f), the Attorney General is authorized to "promulgate rules and regulations and to charge reasonable fees relating to the registration of importers and exporters of controlled substances …."

37.     Pursuant to 5 U.S.C. § 706(2)(C), this Court has authority to "hold unlawful and set aside agency action . . . found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

38.     The DEA's Notice of Application of Rhodes stated that "[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture [raw opium (9600) and concentrate of poppy straw (9670)] *may file comments or objections to the issuance of the proposed registration and may ... file a written request for a hearing* on such application …." Similarly, the DEA's Notice of Application of Cody stated that "[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture [raw opium (9600), poppy straw (9650) and concentrate of raw poppy straw (9670)] *may file comments and objections to the issuance of the proposed registration and may … file a written request for a hearing on such application* …." *Id*. (emphasis added).

11

39. Penick is duly registered to import the NRMs and is registered as a bulk manufacturer of many of the APIs made from those NRMs at issue in these applications.

40. Pursuant to the Controlled Substances Act, the regulations thereunder, and DEA's long-standing application of the law and regulations, Penick is entitled to hearings on the applications to import NRMs submitted by both Rhodes and Cody.

41. The DEA's January 25, 2007 "Corrections" to Notices of Application — 72 Fed. Reg. 3417-01 and 72 Fed. Reg. 3417-02 — improperly and unlawfully: (a) cancelled the pending hearings, (b) terminated proceedings on the Rhodes and Cody applications, (c) fundamentally altered the long-standing application of the regulations to which Penick is subject, and (d) took all these actions without notice and comment rulemaking. Through these actions, Defendants exceeded their authority under law.

42. In addition to these fundamental errors, the DEA's January 25, 2007 "Corrections" to the Notice of Application of Cody and the Notice of Application of Rhodes directly contradict the plain language of the governing regulations in 21 C.F.R. § 1301.34(a). In particular, the "Corrections" state that applications to import NRMs are not required to be published in the Federal Register, thereby arbitrarily and unlawfully abrogating Penick's rights and its opportunity to provide DEA with information relevant to its decisionmaking on importer registration.

43. Pursuant to 5 U.S.C. § 706(2)(A), this Court may "hold unlawful and set aside agency action found to be arbitrary, capricious . . . or otherwise not in accordance with law."

44. Defendants' actions set forth above were each arbitrary, capricious and otherwise violate the law.

45. Additionally, Defendants have deprived Penick of liberty and property without due process of law, in violation of the 5th Amendment of the Constitution.

46. Penick is entitled to hearings on Rhodes's application to import NRMs and on Cody's application to import NRMs. As a result, Penick has an interest that is protected by the 5th Amendment in attending and participating in each of these hearings.

47. Defendants' actions set forth above implicate Penick's protected 5th Amendment interest.

48. Penick is substantially likely to succeed in proving that Defendants' actions set forth above constitute improper and unlawful administrative rulemaking, violate the United States Constitution and the Administrative Procedure Act, and are otherwise unlawful.

49. Penick will not have an adequate remedy at law if Defendants permit either Rhodes's application or Cody's application to go forward without affording Penick a hearing and if Defendants are permitted to circumvent notice and comment rulemaking required by law.

50. Because Penick does not have an adequate remedy at law, it will suffer irreparable harm. Injunctive relief is required to prevent severe irreparable injury to Penick.

51. The harm that Penick will suffer — *inter alia*, the destruction of its right to a hearing as to Rhodes's application and Cody's application and its right to receive notice of applications in the Federal Register of future importers of NRMs— if Defendants are allowed to proceed with their actions set forth above will greatly outweigh the harm to Defendants if they cannot so act.

52. Public policy favors issuance of an injunction (a) preventing Defendants from (i) cancelling either of the pending hearings; (ii) terminating the proceedings on either Rhodes's application or Cody's application; and (iii) denying Penick notice and comment rulemaking

because those actions violate the law and have no basis in law or regulation; (b) compelling Defendants to reinstate the hearings on Rhodes's application and Cody's application and to rescind DEA's January 25, 2007 two "Corrections to Notice of Application" (72 Fed. Reg. 3417-01 and 72 Fed. Reg. 3417-02); and (c) compelling Defendants to recognize the regulatory requirement to publish in the Federal Register a notice of the application to import as set forth in 21 C.F.R. § 1301.34(a). Accordingly, Penick respectfully requests that this Court issue judgment in its favor in the form of that injunction and award Penick its fees and costs and any other relief as deemed just and appropriate.

### COUNT II — DECLARATORY RELIEF

53. Penick incorporates by reference the allegations in paragraphs 1 through 52 as though the same were set forth herein in full.

54. An actual, substantial, immediate, and *bona fide* justiciable controversy exists, under 28 U.S.C. § 2201, that can be resolved by a declaration of the parties' rights.

55. In particular, Defendants' actions create an immediate issue for Penick in that the Defendants dramatically reversed long-established application of their regulations without notice and comment rulemaking and summarily extinguished Penick's rights to hearings in both the Cody and Rhodes applications.

56. Defendants also arbitrarily and capriciously abrogated Penick's right to notice of the application for importer registrations for NRMs, in violation of 21 C.F.R. § 1301.34(a).

57. The rights of the parties can be finally determined by a declaratory judgment from this Court. A declaratory judgment would serve the useful purpose of settling this controversy, in that such a judgment would eliminate further litigation by finally establishing the rights of the parties.

58. Consequently, Penick respectfully requests that this Court declare that:

(a) Defendants' conduct substantially altered Penick's rights and constituted final agency action and regulatory or administrative rulemaking;

(b) Defendants did not provide the procedural predicates to administrative rulemaking required by the 5th Amendment of the Constitution of the United States and/or the Administrative Procedure Act, including notice and opportunity for comment;

(c) Defendants' conduct, including their failure to provide Penick with notice of its intended rulemaking and an opportunity to comment on those rules, violated the Administrative Procedure Act and Penick's due process rights under the Constitution of the United States;

(d) Defendants' January 25, 2007 "Corrections to Notices of Application" (72 Fed. Reg. 3417-01 and 72 Fed. Reg. 3417-02), their cancellation of the hearings in each of those matters, their termination of the proceedings on Rhodes's application and Cody's application, and their abrogation of the right to future public notice of any application for registration to import an NRM are each invalid and void; and

(e) all other just and proper relief.

Respectfully submitted,

_____
Wayne Matelski (Bar No. 211607)
Joshua A. Fowkes (Bar No. 494700)
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
(202) 857-6000

Attorneys for Plaintiff

Date: February 26, 2007

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

### I (a) PLAINTIFFS

Penick Corporation

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Salem County, NJ 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Wayne H. Matelski
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5339
202/857-6340

### DEFENDANTS

Alberto R. Gonzales, United States Department of Justice,
Karen P. Tandy, United States Drug Enforcement Agency

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

CASE NUMBER  1:07CV00397
JUDGE: Royce C. Lamberth
DECK TYPE: Administrative Agency Review
DATE STAMP: 02/26/2007

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III C
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violation of, inter alia, U.S. Constitution and U.S. Administrative Procedure Act

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒  NO ☐  If yes, please complete related case form.

DATE 2/26/07    SIGNATURE OF ATTORNEY OF RECORD  [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.