# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PENICK CORPORATION,** )<br>)<br>    **Plaintiff,** )<br>v. )<br>)<br>**ALBERTO R. GONZALES, et al.** )<br>)<br>    **Defendants.** )<br>_____ )<br>)<br>**CODY LABORATORIES, INC.** )<br>**601 Yellowstone Avenue** )<br>**Cody, Wyoming 82414** )<br>)<br>    **Intervenor-Applicant.** ) | **Civil Action No. 1:07CV00397**<br>**Hon. Royce C. Lamberth** |

## INTERVENOR-APPLICANT CODY LABORATORIES, INC.'S
## MOTION FOR LEAVE TO INTERVENE

COMES NOW the Intervenor-Applicant, Cody Laboratories, Inc. ("Cody"), by and through its undersigned counsel, and respectfully moves this Court for an Order permitting Cody to intervene as a defendant in this action and to file the attached Opposition to Plaintiff's Motion for Preliminary Injunction.

In support of this Motion, there is attached a Memorandum of Points and Authorities.

Pursuant to Local Civil Rule 7(m), counsel for Cody advised counsel for plaintiff and defendant of its intent to file this Motion to Intervene. Counsel for plaintiff does not object to the Motion. Counsel for the government takes no position on the Motion.

Respectfully submitted,

*Terence J. Lynam*

Terence J. Lynam
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
202.887.4045 (Direct)
202.887.4288 (Facsimile)
*Attorneys for Cody Laboratories Inc.*

Dated:  April 2, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PENICK CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| **ALBERTO R. GONZALES, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | **Civil Action No. 1:07CV00397** |
| | ) | **Hon. Royce C. Lamberth** |
| | ) | |
| **CODY LABORATORIES, INC.** | ) | |
| **601 Yellowstone Avenue** | ) | |
| **Cody, Wyoming 82414** | ) | |
| | ) | |
| **Intervenor-Applicant.** | ) | |

**INTERVENOR-APPLICANT CODY LABORATORIES, INC.'S**
**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

Cody Laboratories Inc. ("Cody") submits this memorandum in support of its Motion to Intervene as a defendant in this action.

**I.    Introduction and Background**

Cody Laboratories is a small drug manufacturer located in Cody, Wyoming. Cody is registered with the Drug Enforcement Administration ("DEA") to manufacture various drugs such as oxycdone and hydromorphone. In order to manufacture these products, Cody must obtain morphine and other controlled substances. On July 27, 2005, Cody applied to the DEA to be registered to import certain narcotic raw materials ("NRMs"), i.e., opium, poppy straw, and concentrate of poppy straw ("CPS"). Morphine is derived from these NRMs, which are classified in Schedule II of the Controlled Substances Act of 1970 ("CSA"), 21 U.S.C. § 801 et seq., and are not produced in the United States. Rather, companies that seek to manufacture drug products that are based on ingredients extracted from these NRMs, such as Cody, must either obtain DEA registration to import the raw materials themselves or purchase the active

ingredients from a registered importer, who may well be a competitor drug manufacturing company.

Following receipt of Cody's import registration application, the DEA, on January 23, 2006, published a Notice of Cody's application in the Federal Register.  The Notice identified the three NRMs (opium, poppy straw and CPS)  and stated that any manufacturer of "such basic classes of controlled substances" may file comments or objections to Cody's application and request a hearing.  71 Fed. Reg. 3545 (Jan. 23, 2006).  Although plaintiff Penick Corporation is not a manufacturer of these NRMs, it, along with two other drug companies (also not manufacturers of NRMs) filed comments and objections and requested a hearing on whether Cody's application should be granted.  The case was docketed by an administrative law judge ("ALJ") at the DEA, who set a schedule leading up to a hearing that was set to commence on February 26, 2007.

On January 25, 2007, the DEA issued a "Correction to Notice of Application" for Cody's application to import NRMs.  See 72 Fed. Reg. 341719 (Jan. 25, 2007).  In this Notice, the DEA Deputy Administrator stated that the hearing on Cody's application was not required and was cancelled.  The Notice explained:

> The January 23, 2006, notice of application incorrectly stated that '[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture [NRMs] may file comments or objections to the issuance of the proposed registration and may, at the same time, file a written request for a hearing on such application pursuant to 21 CFR 1301.43 and in such form as prescribed by 21 CFR 1316.47.' Correctly stated, under the Controlled Substances Act (CSA) and DEA regulations, applications to import [NRMs] are not required to be published in the Federal Register. Further, the notice of application, although not required to be published at all, should have stated that 'bulk manufacturers' of [NRMs] may file a written request for a hearing. . . . [S]ince there are no domestic bulk manufacturers of narcotic raw materials registered with DEA, no registrant has a statutory or regulatory right to a hearing on the application. For the reasons set forth therein, . . . I direct the Administrative Law Judge to remove from the agency's administrative docket the hearing on the

2

application of Cody Laboratories, Inc. to be registered as an importer of narcotic raw materials.

Id. In this Notice, the DEA correctly recognized that only bulk manufacturers of the substances

Cody sought to import were entitled to a hearing. Because there are no manufacturers of opium,

poppy straw or CPS in the United States, no persons are entitled to a hearing on an application to

import these substances. The hearings previously granted in prior cases were an exercise of the

DEA's discretion. Accordingly, the DEA exercised its discretion not to grant such a hearing on

Cody's application.

Penick has since filed two challenges in federal court. The first, filed in the U.S. Court of

Appeals for the D.C. Circuit on February 23, 2007, challenges the DEA's decision that "no

registrant has a statutory or regulatory right to a hearing on the application" as arbitrary,

capricious and contrary to law under the Administrative Procedure Act ("APA"). The second is

the complaint in the present case, which Penick filed on February 26, 2007. Penick seeks a

preliminary injunction from the Court enjoining the DEA from proceeding with Cody's

application or that of another potential registrant, Rhodes Technologies, or enforcing the

January 25, 2007 Order excerpted above.

As a third party with a direct interest in this case, Cody respectfully requests that it be

allowed to intervene in the present action as a matter of right under Fed. R. Civ. P. 24(a). In the

alternative, Cody requests that it be granted permission to intervene under Fed. R. Civ. P. 24(b).

## II.    Argument

### A.    Cody Is Entitled To Intervene As A Matter Of Right Under Fed. R. Civ. P. 24(A)

Rule 24(a) of the Federal Rules of Civil Procedure provides that:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the

applicant is so situated that the disposition of the action may as a practical
matter impair or impede the applicant's ability to protect that interest,
unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

The D.C. Circuit has explained that "[a] motion to intervene as of right turns on four

factors: (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to

the property or transaction which is the subject of the action; (3) whether the applicant is so

situated that the disposition of the action may as a practical matter impair or impede the

applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately

represented by existing parties." Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1074

(D.C. Cir. 1998). Because Cody satisfies each of these requirements, it is entitled to intervene in

this action as a matter of right.

### 1.     Cody's Motion To Intervene Is Timely

Plaintiff filed its complaint in this case on February 26, 2007 and obtained its summonses

on February 27 and March 1, 2007. On March 22, 2007, plaintiff filed a Motion for a

Preliminary Injunction. Cody's Motion to Intervene has been filed less than two weeks after

plaintiff moved for the preliminary injunction. The government has not yet answered the

complaint, and is expected to file its opposition to plaintiff's injunction motion on or about the

same date as Cody is filing this Motion to Intervene and its opposition to the injunction motion,

which is being submitted herewith. Under these circumstances, Cody's motion is "timely"

within the meaning of Rule 24(a). See also Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735

(D.C. Cir. 2003) (pre-judgment motion to intervene filed within two months and before answer

was timely); 7C Wright & Miller, Federal Practice and Procedure § 1916 ("[A]n application

made before the existing parties have joined issue in the pleadings has been regarded as clearly

timely."). Furthermore, because Cody agrees to abide by whatever schedules are established by

this Court, its intervention will not delay the proceedings or prejudice the plaintiff or the government in any way.

**2.    Cody Has An Interest In The Subject Matter Of This Action**

It is evident that Cody has a direct interest in this case.  Plaintiff is directly challenging the DEA's January 25, 2007 decision that allows Cody, by name, to go forward with the registration process without a hearing.  Further, plaintiff has asked this Court to bring Cody's registration to a halt and reinstate the pre-January 25, 2007 procedures requiring an expensive and time-consuming administrative hearing process.  Should the Court grant plaintiff's request to enjoin the DEA from cancelling the legally unnecessary hearing, Cody would be directly affected by having the processing of its application by the DEA halted and by being required to undergo the administrative hearing and await the ALJ's decision.

This case is similar to an import-quota case in which the D.C. Circuit found that a group of small oil refiners had a sufficient interest in the subject matter to warrant intervention as of right under Rule 24(a).  In Atlantic Refining Company v. Standard Oil, 304 F.2d 387 (D.C. Cir. 1962), a large refiner challenged Department of Interior regulations establishing import quotas on petroleum.  In finding that the small refiners had a sufficient interest to intervene, the D.C. Circuit explained:

> If the sliding sale in [the challenged regulation] is adjudged to be illegal and set aside and if it is adjudged that any regulation based on a sliding scale would be illegal, the result would be to greatly increase the import quotas of Standard and other large integrated oil companies and very substantially reduce the import quotas of the members of the Refiners Association and of Farmers Union, Frontier, Sioux and other small nonintegrated, independent refiners.

Id. at 391. Similarly, Cody has a clear and direct interest in whether the Court enjoins the DEA from proceeding with Cody's application and from cancelling the hearing that was previously scheduled. See also Olympus Corp. v. United States, 627 F. Supp. 911, 915 (E.D.N.Y. 1985)

5

(allowing intervention by small camera shop that would lose access to foreign-manufactured gray-market products if Customs regulations challenged in action were overturned).

### 3.    Cody's Interests May Be Impaired Or Impeded If It Is Not Permitted To Intervene

Applying the third Rule 24(a) factor, disposition of this action in favor of plaintiff would, as a practical matter, impair or impede Cody's ability to protect its interest in moving ahead with its application to the DEA for registration to import NRMs.  Should the Court, as plaintiff asks, enjoin DEA from moving forward with Cody's registration, and prevent the DEA from suspending the hearing process, Cody would have no recourse for the harm that would be thereby incurred.

Again, the scenario evokes that of <u>Atlantic Refining</u>, in which the D.C. Circuit decided that the parties benefiting from a regulation that the plaintiffs sought to overturn could intervene as of right.  In that case, the D.C. Circuit observed that the small refiners

> cannot maintain an action against Standard to have [the regulation] adjudged valid and if Standard obtains a judgment in the action, adjudging such section to be invalid, there is no remedy they can invoke against Standard to obtain redress for the substantial injuries they will suffer as a result of such judgment. Hence, intervention is vital to the [small refiners].

<u>Atlantic Refining Co.</u>, 304 F.2d at 394. Similarly, Cody could not maintain an action against plaintiff to have the January 25, 2007 Order adjudged valid, have the registration process restarted, or compensate it for the expense of undergoing an unnecessary administrative hearing and the delay in obtaining its registration occasioned thereby.  For these reasons, the third Rule 24(a) factor is satisfied.

### 4.    Cody's Interests Are Not Adequately Represented By The Existing Parties

The final requirement Cody must satisfy to intervene as of right—showing that its interests may not be adequately represented by the existing parties—is a "minimal" one.

Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." (citing 3B J. Moore, Federal Practice para. 24.09-1 (1969)). Even though Cody and the DEA have similar interests in the present action, and even though Cody has no reason to believe that the government's defense of the DEA Order will be anything less than zealous, intervention is proper because Cody is able to present facts that the government may not consider. It is likely that the government will defend the DEA's actions invoking principles of administrative law and deference to the considered actions of an Executive Branch agency in interpreting familiar statutes and its own regulations. Cody will bring to the Court's attention the substantial harm it will suffer if the injunction plaintiff seeks is granted. Furthermore Cody's counsel participated in the administrative proceeding and is familiar with what happened there, including the opportunity that arose for plaintiff to oppose the cancellation of the hearing, which it now claims it had no opportunity to do. The government's Department of Justice trial counsel did not participate in the administrative proceeding and so is naturally not as familiar with it and is not familiar with Cody and the harm that Cody will suffer if an injunction is granted.

The D.C. Circuit's ruling in Atlantic Refining is again instructive. In that case, the Court of Appeals decided that, although the interests of the government and the would-be intervenors coincided insofar as both sought to have the challenged regulations upheld, the government would not be presenting the same arguments as the small refiners. It explained:

> The record before us indicates that counsel for the Secretary intends to defend the attack on the validity of [the regulation] on the ground that the Secretary is given a broad delegation of authority and that the exercise of his expert judgment can be disturbed only if it lacks rational basis and that the independent refiners must receive allocations of foreign crude oil great enough to enable them to offset the price differential in favor of foreign crude oil, in order to remain a part of a strong and healthy domestic refining industry.

> On the other hand, such record shows that the [small refiners] will undertake to meet such attack on [the regulation] on additional and broader grounds by marshalling and presenting the pertinent facts in the highly complex petroleum industry showing price differential between foreign and domestic crude oil, the effect of market conditions, the need for strategically located and widely dispersed refineries in time of war, the need for the survival of the independent producer, how the sliding scale is related to the independent refiners, how it is essential to their survival and the ultimate consequences to consumers, should [the regulation] be invalidated.

Atlantic Research, 304 F.2d at 391. Because the small refiners "sought to be permitted to present additional facts and grounds to support the validity of" the challenged regulatory action, the D.C. Circuit concluded that the government's "representation will, or may be inadequate." Id. at 392-393. Similarly, in Olympus Corp., another case in which a party that stood to benefit from a challenged regulation sought to intervene, the Eastern District of New York decided that

> the Government's representation may be inadequate because 47th Street Photo's interests, as well as its perspective and expertise, may differ significantly from those of the Government's. . . . 47th Street Photo may be expected to make a more vigorous presentation in favor of the regulation in question, given its significant economic interest in the regulation. Further, its private interest may differ somewhat from the more public interest oriented motives of the Government. 47th Street Photo has also pointed out that its legal arguments may differ from those of the Government.

Olympus Corp., 627 F. Supp. at 915-916 (internal citations omitted). In sum, where, as here, a private party stands to benefit from an agency action that a competitor seeks to reverse, the government's defense of that agency action may differ in kind and substance such that its involvement is not adequate to fully protect the private party's interest. Such is the case here.

For the foregoing reasons, Cody satisfies the requirements for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure.

**B.     Cody Satisfies The Requirements For Permissive Intervention Under Rule 24(b)**

Should this Court decide that Cody does not qualify for intervention as of right under Rule 24(a), Cody respectfully requests that permissive intervention be granted under Rule 24(b) of the Federal Rules of Civil Procedure.  That rule provides that a party that files a timely Motion to Intervene may be permitted, in the discretion of the court, to intervene in an action if its claim or defense and the main action have a question of law or fact in common, and the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.  Fed R. Civ. P. 24(b).

Here, there is a clear question of law and fact in common among Cody, Penick and the government.  Cody seeks to defend the January 25, 2007 Order that suspended the hearing requirement and allowed its registration to import NRMs to proceed, which is exactly what plaintiff attacks and the government will defend.  Because so little time has elapsed since plaintiff filed the instant action, allowing Cody to intervene will not unduly delay or prejudice the adjudication of this case.

**C.     Conclusion**

Cody respectfully requests that its Motion to Intervene be granted and that the Court grant permission for it to file the attached Opposition to Plaintiff's Motion for a Preliminary Injunction.

Respectfully submitted,

*Terence J. Lynam*

Terence J. Lynam
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
202.887.4045 (Direct)
202.887.4288 (Facsimile)
*Attorneys for Cody Laboratories Inc.*

Dated:  April 2, 2007

9

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused a copy of the attached Motion to Intervene,

Memorandum of Points and Authorities, Proposed Order, Rule 7.1 Certificate and Opposition to

Motion for Preliminary Injunction to be served this 2nd day of April, 2007, via Overnight Mail on

the following:

> Tamarra Ulrich
> Civil Division – Federal Programs Branch
> United States Department of Justice
> 20 Massachusetts Avenue, NW – Room 7202
> Washington, DC 20530

> Wayne Matelski, Esq.
> Arent Fox Kintner Plotkin & Kahn, PLLC
> 1050 Connecticut Avenue NW
> Washington, DC 20036-5339
> *Counsel for Penick Corporation*

_____
Terence J. Lynam

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PENICK CORPORATION,          )
                                          )

          Plaintiff,        )
    v.                               )
                                          )

ALBERTO R. GONZALES, <u>et al.</u>   )
                                          )

       Defendants.      )     Civil Action No. 1:07CV00397
_____  )     Hon. Royce C. Lamberth
                                          )

CODY LABORATORIES, INC.    )
601 Yellowstone Avenue        )
Cody, Wyoming 82414           )
                                          )

      Intervenor-Applicant.  )

**O R D E R**

Upon consideration of the Motion to Intervene filed by Cody Laboratories, Inc. and the

position of the plaintiff and defendant regarding the Motion, it is hereby

ORDERED that Cody Laboratories, Inc.'s Motion to Intervene as a defendant is

GRANTED, and it is

FURTHER ORDERED that the Clerk shall accept for filing the Opposition to Plaintiff's

Motion for a Preliminary Injunction submitted by Cody Laboratories, Inc.


_____          _____
   Date                                       United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENICK CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ALBERTO R. GONZALES, et al. | ) |
| | ) |
| Defendants. | ) |
| ———————————————— | ) |
| | ) |
| CODY LABORATORIES, INC. | ) |
| 601 Yellowstone Avenue | ) |
| Cody, Wyoming 82414 | ) |
| | ) |
| Intervenor-Applicant. | ) |

Civil Action No. 1:07CV00397
Hon. Royce C. Lamberth

## INTERVENOR-APPLICANT CODY LABORATORIES, INC.'S
## CERTIFICATE REQUIRED BY L.CV.R.7.1

I, the undersigned counsel of record for Intervenor-Applicant Cody Laboratories, Inc.,

certify that to the best of my knowledge and belief, there are no parent companies, subsidiaries or

affiliates of Cody Laboratories, Inc. which have outstanding shares of securities in the hands of

the public.

These representations are made in order that judges of this court may determine the need

for recusal.

Respectfully submitted,

Terence J. Lynam
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
202.887.4045 (Direct)
202.887.4288 (Facsimile)
*Attorneys for Cody Laboratories Inc.*

Dated: April 2, 2007

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PENICK CORPORATION, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| ALBERTO R. GONZALES, <u>et al.</u> | ) | |
| | ) | |
| **Defendants.** | ) | Civil Action No. 1:07CV00397 |
| _____ | ) | Hon. Royce C. Lamberth |
| | ) | |
| CODY LABORATORIES, INC. | ) | |
| 601 Yellowstone Avenue | ) | |
| Cody, Wyoming 82414 | ) | |
| | ) | |
| **Intervenor-Applicant.** | ) | |

## INTERVENOR-APPLICANT CODY LABORATORIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Intervenor-Applicant Cody Laboratories, Inc. ("Cody"), through counsel, hereby submits this Opposition to Plaintiff's Motion for a Preliminary Injunction.

## I.    Introduction and Factual Background

Cody Laboratories, Inc. is a small generic drug manufacturer located in Cody, Wyoming. Plaintiff Penick Corporation is a competitor of Cody's in the generic drug manufacturing industry. Therefore, Penick has a vested interest in doing all it can to delay, and ultimately prevent, the Drug Enforcement Administration from considering, and granting, Cody's application for registration as an importer of three Schedule II controlled substances: opium, poppy straw and concentrate of poppy straw ("CPS") (collectively referred to as "narcotic raw materials" or "NRMs"). Penick is one of only a handful of companies that is registered with DEA to import these NRMs, which it uses to manufacture various drug products such as morphine, codeine and hydrocodone. <u>See</u> Penick's Complaint, at ¶ 25.

On July 27, 2005, Cody filed an application with the DEA to be registered as an importer of opium, poppy straw and CPS. The Notice was published in the Federal Register on January 23, 2006. The Notice provided that "any manufacturer who is presently, or is applying to be, registered with DEA to manufacture such basic classes of controlled substances" may file comments or objections to Cody's proposed registration and may request a hearing.

Penick is not registered with DEA to manufacture opium, poppy straw or CPS. Nevertheless, Penick filed comments and objections to Cody's registration application and requested a hearing. Two other companies – Noramco of Delaware, Inc. and Mallinckrodt, Inc. – also filed comments and objections and requested a hearing, even though they do not manufacture these NRMs. These hearing requests by Cody's competitors were granted and an Administrative Law Judge at DEA docketed the case and set a schedule for various filings. The case then proceeded on the administrative track. Cody was required to submit a Prehearing Memorandum summarizing the witnesses and evidence it expected to present at the hearing. Cody was subsequently required to file its witnesses' direct testimony in written form. The ALJ set aside two weeks for the hearing and scheduled it to begin on February 26, 2007.

On December 4, 2006, the government, represented in the ALJ proceeding by counsel for the DEA, filed an amended Prehearing Memorandum in which it withdrew its proposed documents and stipulations and declined to designate witnesses. The government stated that it is the agency position "that a hearing is not required in the current posture of the case."

Cody agreed with the government's position that a hearing was not required. See Cody's Objections and Motion to Strike Certain Direct Testimony of Penick, Noramco and Mallinckrodt, at 2, attached as Exhibit 1. This view was also shared by Rhodes Technologies, Inc, another applicant for DEA registration as an importer of NRMs, who was granted permission to participate in the Cody administrative matter. Rhodes sent a five-page letter to the ALJ on

January 10, 2007 setting forth the reasons why a hearing was not required on either Cody's application or on Rhodes' application.[1]

Rhodes' letter and Cody's and the DEA's filings were served on Penick, Noramco, and Mallinckrodt, the only companies that requested a hearing on Cody's application. Penick, on behalf of itself, Noramco and Mallinckrodt, sent a detailed six-page letter, dated January 23, 2007, to the DEA Deputy Administrator and Deputy Assistant Administrator for Diversion Control fully setting forth Penick's reasons why it believed a hearing was required. See Exhibit 2, attached hereto. Penick sent a copy of its letter to the ALJ.

On January 25, 2007 the DEA Deputy Administrator issued and published a Federal Register Notice correcting its earlier Notice of January 23, 2006 and stating that a hearing on Cody's application was not required. Accordingly, the Deputy Administrator directed the ALJ to remove the Cody hearing from its docket. On February 1, 2007, the ALJ entered an Order Terminating Proceedings, canceling the hearing scheduled for February 26, 2007 and terminating all proceedings in the administrative matter. See Exhibit I to Penick's Motion.

At this time, Cody's import registration application is still pending before the DEA, and Cody has received no indication whether it will be granted or denied.

## II.    ARGUMENT

### A.    Penick Has No Right To A Hearing Under Any Statute Or Regulation

Cody's application to import opium, poppy straw and CPS was made pursuant to the import provisions of 21 U.S.C. § 952(a)(1), which allows for the importation of such amounts of these substances as the Attorney General finds to be necessary "to provide for medical, scientific, or other legitimate purposes." Id. Within the relevant provisions of the Controlled Substances

---

[1] Rhodes had made the same argument in June 2006 in the administrative proceeding on its import application. Penick was a party to that proceeding, along with Noramco and Mallinckdrodt.

Act, the only statutory provision granting a hearing states that prior to issuing a regulation under § 952(a) the Attorney General "shall give manufacturers holding registrations for the bulk manufacture of the substance an opportunity for a hearing." 21 U.S.C. § 958(i). Penick is not a bulk manufacturer of opium, poppy straw or CPS and so has no statutory right to request a hearing on Cody's application.

Pursuant to its statutory authority, DEA promulgated a regulation governing import applications made under 21 U.S.C. § 952(a)(2)(B), which does not address the importation of opium, poppy straw or CPS. This regulation states that when applications under § 952(a)(2)(B) are made, notice of the application shall be published in the Federal Register and mailed to each person "registered as a bulk manufacturer of that controlled substance." 21 CFR § 1301.34(a). The regulation also states that "any such person," i.e., a "bulk manufacturer of that controlled substance" may, within 30 days, submit written comments or objections to the application and request a hearing. Id. Penick claims a hearing right under on this regulatory provision, even though Cody's import application was made under § 952(a)(1), not § 952(a)(2)(B). But even under this regulation, Penick is not entitled to a hearing because it is not a bulk manufacturer of the substances that Cody seeks to import.

Penick, just like Noramco and Mallinckrodt, is a competitor of Cody in the generic drug industry. Penick's motives in seeking the hearing are not as selfless as it claims. See Penick's Memorandum of Points and Authorities, at 12 ("Penick Memo") (claiming that Penick is concerned with assuring an adequate and uninterrupted supply of NRMs for medical and other purposes and with assuring that there are regulatory controls against diversion). These are the concerns of the DEA; Penick is concerned with stifling competition so that it will continue to enjoy being one of the few companies permitted to import these NRMs, thus assuring its market share with the other large registrants, Noramco and Mallinckrodt.

For this reason, Penick filed comments and objections to Cody's application, and requested a hearing, which has delayed the application processing for well over a year. Indeed, it has been 20 months since Cody filed its application and no decision has been made on it yet. The administrative hearing procedure took over a year to schedule, i.e., from the January 2006 publication of the Notice of application to the February 26, 2007 hearing date. In past cases it has taken the ALJ a year or more to issue a decision after the hearing. But even then, more delay occurs, as the ALJ's decision is not final but is only a Recommended Ruling, which must be reviewed and considered by the DEA Deputy Administrator. This can take another year. Then if a decision is made to deny the application, a hearing to show cause why the application should not be denied is held, if requested by the applicant. 21 C.F.R. § 1301.35. Only after this process has run its course does the DEA Administrator issue a final order granting or denying the registration. 21 C.F.R. § 1301.46.[2]

A hearing requested by an import applicant's competitors, such as the one requested by Penick in this case, is a totally unnecessary, extremely time-consuming and costly exercise, which does not lead to a final order and which might be followed by a second hearing. Neither an applicant for import registration, nor the DEA, should be required to incur the expense and the inherent delay that results from this unnecessary, competitor-driven hearing.

The DEA appropriately recognized the potential for abuse of the hearing process when it explained its decision to correct the Federal Register Notice and cancel the hearings on the applications of Cody and Rhodes:

---

[2] The chronology of events regarding the import registration application of Chattem Chemicals, Inc. illustrates the lengthy administrative process resulting from the granting of these hearings. Chattem filed its application with DEA on February 9, 2002. A hearing before an ALJ was held in September and October 2002 and January 2003. The ALJ did not issue an Opinion and Recommended Ruling until January 13, 2005. The Deputy Administrator's Final Order granting the registration was not issued until over a year later, on February 17, 2006. Thus it took Chattem four years to obtain its registration.

> Among other consideration, invocation of the hearing right by a
> competitor can add considerable time (months and sometimes years) to the
> process by which the agency determines whether to grant the application.
> An existing registrant could ask for a hearing simply to delay a
> competitor's entry into the market – particularly given that DEA has not
> promulgated any criteria for deciding whether to grant these types of
> hearing requests.  Such a delay would tend to run counter to the obligation
> of an agency under the Administrative Procedure Act [which] requires [it]
> to conclude adjudications "with due regard to the convenience and
> necessity of the parties *** and within a reasonable time." 5 U.S.C.
> 555(b)

72 Fed Reg. 3417 (January 25, 2007) (attached as Exhibit 3)

**B.      Plaintiff Is Not Entitled to A Preliminary Injunction**

The prerequisites for the entry of a preliminary injunction are well settled.  In deciding

whether to grant such injunctive relief, the Court must consider: (1) whether there is a substantial

likelihood that the plaintiff will succeed on the merits of the case; (2) whether the plaintiff will

suffer irreparable injury absent an injunction; (3) the harm to the defendant or other interested

parties; and (4) whether an injunction would be in the public interest or at least not adverse to the

public interest.  Mova Pharms. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  The

Court balances these four factors such that a particularly strong showing on one or more can

outweigh a weaker showing on another.  CityFed Fin. Corp. v. Office of Thrift Supervision, 58

F.3d 738, 747 (D.C. Cir. 1995).

**1.      There Is No Substantial Likelihood That Penick Will Succeed
On The Merits Of The Case**

As discussed above, the statutory provision granting a right to a hearing only grants such

right to "manufacturers holding registrations for the bulk manufacture" of the substance or

substances being imported.  21 U.S.C. § 958(i).  The plain wording of the regulation, 21 C.F.R.

§ 1301.34, clearly states that it applies to applications made under § 952(a)(2)(B) and that the

Notice of such application "shall be mailed. . . to each person registered as a bulk manufacturer

of that controlled substance." 21 C.F.R. § 1301.34(a).  The regulation then goes on to state that

6

"any such person," i.e., a bulk manufacturer of "that controlled substance" may, within 30 days, file written comments or objections and may request a hearing. Id.

The controlled substances that are the subject of Cody's import application are opium, poppy straw and CPS. Penick is not a "bulk manufacturer" of any of these NRMs. Indeed, as the DEA recognized, there are "no domestic bulk manufacturers of narcotic raw materials registered with DEA." Exhibit 3 (Fed. Reg. Notice). While Penick claims to be an "importer/ manufacturer" (e.g., Penick Memo, at 12), it does not claim to manufacture opium, poppy straw or CPS, but only to manufacture substances derived from these NRMs. But that does not make it a manufacturer of the NRMs. Thus under the plain wording of the regulation, Penick was not entitled to submit comments or objections or request a hearing on Cody's application.

Penick's argument that DEA was required to publish for Notice and Comment its correction of its earlier Notice of January 23, 2006 is equally meritless. All DEA did was clarify that only "bulk manufacturers" of opium, poppy straw and CPS were entitled to request a hearing, whereas the earlier Notice stated "any manufacturers" of "such basic classes of controlled substances" could so request. Exhibit 3. This clarification did not harm Penick in any way, as it is not such a manufacturer under either wording. DEA simply decided to exercise its discretion and not grant legally unnecessary hearings. Penick had no basis to rely on the prior discretionary hearings held in other cases. Indeed, Penick recognized that these hearings were not required when it went through the application process in 2000 for its own import registration. See Exhibit A to Penick's Motion. At that time, Penick argued that the "regulation is unambiguous and means that only bulk manufacturers of the controlled substance sought to be imported and applicants who also currently seek permission to import those substances may file written comments, object, or request a hearing." Id., at 3. By canceling the hearing on Cody's

application, DEA did nothing more than agree with the very argument Penick made several years ago.

Now that Penick has received its import registration, it sings a different tune. But it had the opportunity during Cody's administrative proceeding to present its newly-adopted position that hearings should be held. Penick received the DEA's Amended Prehearing Memorandum of December 4, 2006 in which DEA stated that hearings were not required. It also received Cody's and Rhodes' subsequent filings agreeing with that position. Penick then waited until January 23, 2007 to submit to both the Deputy Administrator and the ALJ its detailed response in which it argued that hearings should be held. Exhibit 2. Thus Penick had almost two month's notice of the DEA's position that hearings were not required and had the opportunity to submit, and did in fact submit, its detailed comments on the DEA's stated position. Nothing more should be required.

**2.    Penick Has Suffered No Harm, Whereas The Harm To Cody By An Injunction Will Be Substantial**

Penick's claim of harm is entirely speculative. Cody's application has not yet been granted. Penick simply claims that if it is granted, without a hearing being held, then Penick's "ability to protect its rights . . . would be irrevocably damaged." Penick Memo, at 21. This is clearly speculative.

On the other hand, Cody will suffer significant harm if a preliminary injunction is granted. Cody has been awaiting a decision on its registration application since July 2005. The processing of the application was delayed for well over a year by an unnecessary administrative hearing process. An injunction that would compel DEA to hold a hearing would easily add

another year to this process, even if the hearing were commenced next week[3]. Then, after the

ALJ's non-binding Recommended Ruling, <u>another</u> hearing could be held if the Deputy

Administrator is inclined to deny the application. Penick's assertion (Penick Memo, at 22) that

"an injunction may only briefly delay DEA from making a decision as to Rhodes' and Cody's

application" is clearly incorrect and not borne out by the prior administrative record in this case.

Cody will also be harmed by having to incur the expense of defending itself against the

baseless allegations made by Penick and the other competitors who oppose Cody's entry into the

market that they currently control. An example of these allegations is discussed in the next

section.

### 3.    An Injunction Is Not In The Public Interest

Penick's main public interest argument is simply a variation of its argument that it is

likely to succeed on the merits. That is, Penick argues that there is a strong public interest in

having DEA adopt Penick's view that hearings should be held whenever requested by companies

that are not manufacturers of the NRMs sought to be imported. Because Penick's merits

argument fails, <u>see</u> point 1 <u>supra</u>, this public interest argument does as well.

The real public interest here is in eliminating the erroneous practice of holding costly,

time-consuming and unnecessary hearings on applications for import registrations. The public

interest is served by eliminating these barriers to other drug companies entering this market so

that greater competition, within the parameters of the applicable statutory scheme of the

Controlled Substances Act, may occur. There is also a public interest in making sure that

competitors of the registration applicants are not permitted to erect these barriers and stifle

competition.

---

[3] Of course, a hearing could not be commenced until mutually agreeable dates could be identified with the ALJ and counsel for Cody, Penick, Mallinckrodt, Noramco and the DEA. The February 2007 hearing date was set seven months in advance, in July 2006.

Penick argues that it has "valuable evidence" to submit on Cody's application. However, the so-called "valuable evidence" was already identified in Penick's Prehearing Memorandum and its proposed written testimony in the ALJ proceedings. See Exhibit E to Penick's Motion. It consisted of Penick's personal opinion that Cody was not qualified to import the NRMs and extract the active ingredients from them. Penick, like Noramco and Mallinckrodt, largely based its argument on the fact that Cody received a warning letter from the Food and Drug Administration regarding some of its manufacturing practices. Id. at 6.

As Cody pointed out, warning letters from the FDA are not an unusual event, as evidenced by the fact that the FDA has also issued warning letters to Mallinckrodt, one of the other registrants that requested a hearing. Furthermore, Cody has corrected all the deficiencies noted by the FDA. Of course, Penick and the other companies would not know anything about that or about the actual condition of Cody's manufacturing facility, as none of them has ever been to the facility or spoken to Cody's employees about it. All these facts were pointed out by Cody when it filed its Objections and Motion to Strike Certain Direct Testimony of Penick, Noramco, and Mallinckrodt. Exhibit 1.

Thus, Penick's claim that it has "valuable evidence" to present about Cody's application is disingenuous because it is the obviously biased personal opinion of a competitor and is based on its uninformed view of the FDA warning letter, and its complete lack of knowledge about Cody's response to that letter. In any event, the DEA is perfectly capable of inspecting Cody's facilities and determining the status of its compliance with any applicable regulations. Cody is already a manufacturer of controlled substances and subject to DEA inspection. The DEA will conduct additional inspections, as needed, to evaluate Cody's import registration application. The public interest is well-served by DEA's oversight in this area. The agency is well-equipped to perform its job of determining whether granting Cody's application is in the public interest.

An unnecessary hearing brought on only at the request of Cody's competitor does not serve to advance this public interest. Indeed, the uninformed, specious and speculative arguments against Cody's application that were raised by Penick serve to illustrate how existing registrants could, and in fact do, as DEA stated, "ask for a hearing simply to delay a competitor's entry into the market" and "without making any showing that the hearing either would assist the agency in deciding whether to grant the application or otherwise advance the goals of the [Controlled Substances Act]." Exhibit 3, at 2.

III.    **Conclusion**

For these reasons, Penick's motion for a preliminary injunction should be denied.

Respectfully submitted,

Terence J. Lynam
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
202.887.4045 (Direct)
202.887.4288 (Facsimile)

*Attorneys for Cody Laboratories Inc.*

Dated:  April 2, 2007

# EXHIBIT 1

**UNITED STATES DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| In the Matter of ) | |
| ) | Docket No. 06-53 |
| Cody Laboratories, Inc. ) | |

**CODY LABORATORIES, INC.'S OBJECTIONS AND MOTION TO STRIKE**
**CERTAIN DIRECT TESTIMONY OF PENICK, NORAMCO AND MALLINCKRODT**

Cody Laboratories, Inc. (Cody Labs") hereby objects to, and moves to strike, certain

direct testimony submitted by Penick Corporation, Noramco, Inc. and Mallinckrodt, Inc., the

objectors in this case.

The written direct testimony submitted by the objectors is objectionable on several

grounds. Much of their submitted testimony is not testimony at all, but rather simply argument

of counsel. Other portions of the testimony represent opinions by unqualified individuals who

are not testifying as experts, or pure speculation. In addition, much of this proposed testimony is

irrelevant to the issue to be decided in this case, which is whether Cody Labs should be issued a

registration by the DEA to import opium, poppy straw and poppy straw concentrate (PSC).

The Administrative Law Judge's Prehearing Ruling of August 9, 2006 directed the parties

to submit written direct testimony "in lieu of examination of witnesses at the hearing."

Prehearing Ruling, at 1. This procedure was designed to save time and frame the issues to be

decided, but was not an invitation to fill the written testimony with matters that would never be

admissible were the witness to be testifying live on direct examination at the hearing. Yet that is

precisely what the objectors have done, _i.e._, in many instances they have abused the written

testimony procedure by injecting arguments of counsel, unqualified opinion, speculation and

irrelevant matters into the written testimony.

1

While the Federal Rules of Evidence do not govern this proceeding, that fact is not an invitation to the objecting companies to flood the record with anything they wish to talk about. Nor is the remedy here simply to admit all the proposed testimony and then have the Judge determine what weight to give it. Such a procedure would unduly lengthen this hearing and unnecessarily burden the Judge with a longer record than is necessary. Such a procedure would also accomplish what is clearly one of the objectors' principal goals: to draw out this process as long as possible, so that it will be years before Cody Labs will ever even find out if it is going to obtain its registration.

These tactics by the objectors serve to underscore the correctness of the position taken by DEA's counsel in this case that "a hearing is not required in the current posture of this case." Government's Amended Prehearing Memorandum, at 2. The hearing that has been scheduled in this case is not required by statute or regulation – it is discretionary. A hearing is only required if one is requested by a person who is registered as a bulk manufacturer of the controlled substances sought to be imported, which in this case are opium, poppy straw and PSC. 21 U.S.C. § 958(i); 21 C.F.R. § 1301.34(a). None of the objectors are manufacturers of opium, poppy straw or PSC, so none is entitled to a hearing.

Therefore, if a hearing must nevertheless be held, it should be limited to evidence bearing on the issue of Cody Labs' application. The evidence admitted from the objectors should be limited to that permitted by the hearing rules, and every effort should be made to avoid filling the record with extraneous, irrelevant, and incompetent testimony. The rules governing this hearing specifically state that

> The presiding officer shall admit only evidence that is competent, relevant, material and not unduly repetitive.

2

21 C.F.R. § 1316.59(a). Furthermore, opinion testimony from unqualified witnesses may not be admitted. 21 C.F.R. § 1316.59(b). Arguments of counsel that are submitted in the written direct testimony are clearly not competent evidence. In fact, in a hearing on an application to import controlled substances, the rule specifically states that "extensive argument should not be offered into evidence but rather presented in opening or closing statements of counsel or in memoranda or proposed findings of fact and conclusions of law." 21 C.F.R. § 1301.42.

The written direct testimony submitted by the objectors violates these rules and principles in numerous ways, as described below.[1]

## I.    Penick Corporation

### A.    Testimony of Stuart A. Rose of Penick

Penick submitted the written testimony of its President and CEO, Stuart A. Rose. Cody Labs makes the following objections to Mr. Rose's testimony and moves to strike, as follows:

1. <u>Testimony</u>: Penick does not "believe" that Cody has sufficient expertise or resources to carry out its proposed NRM importation and processing activities. Page 5, lines 7-9.

<u>Objection</u>: A corporation is not competent to express a belief. Mr. Rose's own belief is irrelevant. He is not an expert witness, but the president of a competitor company. His statement as to what Penick "believes" about Cody Labs' expertise or resources is simply Penick's argument, which may be made by its counsel, but should not be admitted as testimony.

2. <u>Testimony</u>: Penick does not "believe" that Cody Labs has the necessary technologies, expertise or facilities. Page 5, lines 10-12.

<u>Objection</u>: Again, a corporation is not competent to express a belief. Mr. Rose's own belief is irrelevant. He is not an expert witness, but the president of a competitor company. His

---

[1] Cody Labs reserves the right to raise additional objections to the testimony of Penick, Noramco and Mallinckrodt at the hearing.

3

statement as to what Penick "believes" about Cody Labs' expertise or resources is simply

Penick's argument, which may be made by its counsel, but should not be admitted as testimony.

3. <u>Testimony</u>: It is "unclear to Penick" that Cody Labs has demonstrated either a

mastery of the technology or facilities necessary to carry out the two stages for processing

NRMs. Page 2, lines 11-13.

<u>Objection</u>: It is irrelevant whether this is clear to Penick, nor is Mr. Rose competent to

express this opinion. This statement is also argument of counsel, in the guise of something being

"unclear" to Penick.

4. <u>Testimony</u>: Mr. Rose asserts that Cody's alleged "lack of experience" and an alleged

failure to comply with the CSA "suggests that Cody does not possess the requisite familiarity

with the 80/20 rule, the customs and dynamics of the international opiate API market, and the

sensitive issues involved in importing narcotic raw materials." Page 7, lines 6-8.

<u>Objection</u>: This is both speculation by Mr. Rose and argument of counsel. It is not

competent factual evidence. Mr. Rose is president of a competitor company and should not be

permitted to offer his personal opinions on these issues. Counsel may make this argument in an

opening or closing statement (21 C.F.R. § 1301.42), but not through the testimony of a purported

fact witness.

5. <u>Testimony</u>: Mr. Rose asserts that Cody Labs lacks relevant experience and facilities

and therefore, to the "best of [his] knowledge and belief, Cody Labs cannot advance the

technology of manufacturing opiate APIs." Page 7, lines 9-12.

<u>Objection</u>: This is speculation by Mr. Rose. It is also argument of counsel. Mr. Rose's

personal opinion on these matters is irrelevant, nor is he competent to offer such opinions.

6. <u>Testimony</u>: Mr. Rose asserts that in his "opinion" Cody Labs cannot meet the public

interest criteria established under the relevant statutes and regulations. Page 9, lines 7-10.

4

<u>Objection</u>: This is speculation by Mr. Rose. It is also argument of counsel. Mr. Rose's personal opinion on these matters is irrelevant, nor is he competent to offer such opinions.

## II.    Noramco

### A.    Testimony of Michael E. Moy

Michael Moy is a consultant hired by Noramco. His direct testimony focuses on the FDA warning letter issued to Cody Labs and his opinion regarding the significance of that letter. Mr. Moy's testimony should be stricken because it is "unduly repetitive." 21 C.F.R. § 1316.59(a). Noramco also submitted the direct testimony of James C. Morrison, another consultant hired by Noramco, to offer testimony about the effect of the FDA warning letter. In fact, Mr. Morrison offers 22 pages of written testimony about this letter. Mr. Moy's testimony is repetitive of the points already covered by Mr. Morrison. In fact, Moy's testimony specifically refers to Morrison's testimony. <u>See</u> Moy testimony, page 3, lines 23-24 ("As more fully discussed in the testimony of Mr. Morrison . . ."). There is no reason to burden the record with Mr. Moy's testimony when Mr. Morrison already has covered this topic.

Mr. Moy's testimony is also objectionable because it is speculative. On page 3, lines 16-18, he states that the information contained in the warning letter about Cody "<u>may</u> indicate lack of compliance with DEA requirements" (emphasis added). This is obviously speculation and should not be admitted. By the time he concludes his written testimony, Mr. Moy changes his speculative assertion to an affirmative assertion that "the company is not capable or unwilling to meet the stringent regulatory requirements of the Controlled Substances Act for an importer of NRMs." Moy testimony, page 5, lines 9-10. This statement, although utilizing stronger language, is just as speculative as Mr. Moy's previous speculation when he used the word "may." Furthermore, Mr. Moy is not competent to offer an opinion about whether Cody Labs satisfies regulatory requirements to be an importer of NRMs – he has never visited the Cody Labs facility

5

or spoken to anyone at the company. His opinions are based solely on his reaction to the FDA warning letter, without even knowing what Cody Labs did in response to that letter. Because Mr. Morrison's testimony covers the warning letter at length, Mr. Moy's testimony adds nothing that is "competent, relevant . . . and not unduly repetitive." 21 C.F.R. § 1316.59(a). Therefore, it should be stricken.

### B.    Testimony of Michael B. Kindergan of Noramco

Noramco submitted the direct testimony of its Vice President, Michael B. Kindergan. Cody Labs objects to, and moves to strike, the following portions of Mr. Kindergan's testimony:

1. Testimony:  Two paragraphs of Mr. Kindergan's testimony are entitled "Adequacy of Competition." Page 5, lines 15-25; page 6, lines 1-2. These paragraphs present an argument as when the public interest is served, and what "adequately competitive conditions" means.

Objection:  This is clearly an argument of counsel. It should not be permitted in the direct testimony of a fact witness, but may be presented in closing argument. 21 C.F.R. § 1301.42.

2. Testimony:  Mr. Kindergan presents almost two pages of written testimony about the 80/20 rule and the necessity of importing opium from India to satisfy foreign policy objectives. See ¶¶ 36-43, pages 10-12.

Objection:  This testimony is "unduly repetitive" and should not be admitted. See 21 C.F.R. § 1316.59(a). As Mr. Kindergan acknowledges, this subject was covered "in more detail" in the testimony that Noramco submitted from its expert consultant Frank L. Sapienza. Kindergan testimony, page 10, line 21. Mr. Sapienza submitted 21 pages of testimony and covered the 80/20 rule and foreign policy issues in detail. Mr. Kindergan's testimony is repetitive on this topic and should be stricken. Part of Mr. Kindergan's testimony on pages 10-12 is also objectionable because it is clearly argument of counsel, i.e., page 11, lines 21-25 describe

6

a scenario that Mr. Kindergan calls "arbitrary and capricious." Such arguments should be limited to closing statement.

3. <u>Testimony</u>: Mr. Kindergan includes two paragraphs of testimony about what the DEA "must do" and "is not required" to do, and what its "obligation" is under the relevant statutes. Page 12, ¶¶ 44 and 45.

<u>Objection</u>: This is also an argument of counsel as to what the law requires. It should not be admitted through the testimony of a fact witness. Mr. Kindergan is not testifying as an expert witness, but rather as an officer of a competitor company.

**III.    Mallinckrodt Pharmaceuticals**

    **A.    Testimony of Lloyd Hill of Mallinckrodt**

Mr. Hill is Director of R&D Technical Support for Mallinckrodt Pharmaceuticals. Cody Labs makes the following objections to Mr. Hill's testimony and moves to strike, as follows:

1. <u>Testimony</u>: Mr. Hill describes his own experience with the extraction of alkaloids from NRMs and then asserts that "Cody does not appear to have the ability to promote technical advances in the act of manufacturing these substances." Page 5, lines 16-20.

<u>Objection</u>: This is speculation by Mr. Hill. It is also argument of counsel. Mr. Hill is not qualified to give an opinion on Cody Labs' abilities regarding technical advances. His testimony gives no indication that he has ever visited Cody Labs' facility, or talked to its employees about their capabilities. He is not an expert witness, but merely an employee of a competitor company. The personal opinion of an employee of a competitor company with no personal knowledge of Cody Labs is irrelevant. Counsel may present this opinion in a closing statement, but not through the testimony of a purported fact witness. 21 C.F.R. § 1301.42.

7

2. <u>Testimony</u>: Mr. Hill asserts a number of purported facts about Indian Opium Processing in section III of his testimony entitled "Difficulties with Indian Opium Processing." Page 3, lines 14-23-Page 4, lines 1-16.

<u>Objection</u>: All of the testimony offered by Mr. Hill in section III of his testimony is irrelevant. It is simply inserted in his testimony as background in order for him to give his speculative, inadmissible opinion that Cody Labs lacks "the ability to promote technical advances in the act of manufacturing these substances," described in Objection No. 1 above.

3. <u>Testimony</u>: Mr. Hill asserts a number of purported facts about Mallinckrodt's investment in research and development. Page 5, lines 5-15.

<u>Objection</u>: All of the testimony offered by Mr. Hill related to the extent and nature of Mallinckrodt's investment of time or money in its development of opioid alkaloids is irrelevant. All that is relevant to Mallinckrodt's participation in Cody's hearing is whether Mallinckrodt is able to establish itself as a "bulk manufacturer of the substance." 21 U.S.C. § 958(i). However, Mallinckrodt is not a bulk manufacturer of the substances Cody seeks to import, namely opium, poppy straw, and poppy straw concentrate. Especially given that it cannot establish itself as such a manufacturer, Mr. Hill's testimony as to Mallinckrodt's research and development efforts generally in its manufacturing business is irrelevant.

**B.    Testimony of Richard A. Hoyt of Mallinckrodt**

Mr. Hoyt is Vice President Business Development of Mallinckrodt's Pharmaceutical Division. Cody Labs makes the following objections to Mr. Hoyt's testimony and moves to strike, as follows:

1. <u>Testimony</u>: Mr. Hoyt asserts that "based on the publicly available information, Cody Laboratories, Inc. ("Cody") apparently has little or no personal knowledge with regards to the handling and processing of NRMs." Page 4, lines 12-14.

Objection: This is speculation by Mr. Hoyt. It is also argument of counsel. There is no indication in Mr. Hoyt's testimony that he has ever visited Cody Labs' facility or talked to their employees about their capabilities. Mr. Hoyt is not qualified to give an opinion on the extent of Cody Labs' "personal knowledge." The opinion of an employee of one of Cody Labs' competitors with no personal knowledge of Cody Labs' business is irrelevant.

2. Testimony: Mr. Hoyt asserts that his opinion as to Cody's purported "little or no personal knowledge" is based on a Billings Gazette newspaper article citing the purported lack of pharmaceutical manufacturing experience of Cody's president and former vice president. Page 4, line 14-16.

Objection: Testimony based on statements in newspaper articles is inherently unreliable. While the Federal Rules of Evidence do not govern this hearing, nevertheless the issues in this case should not be decided based on newspaper articles. These articles should not be admitted as support for Mr. Hoyt's irrelevant and speculative opinion.

3. Testimony: Mr. Hoyt asserts that "[n]othing in the publicly available information about Cody indicates that they possess the skills, technology, or manufacturing capabilities necessary to extract alkaloids from either opium or PSC." Page 6, lines 14-16.

Objection: This is speculation by Mr. Hoyt. The opinion of an employee of one of Cody's competitors with no personal knowledge of Cody's skills, technology or manufacturing capabilities is irrelevant.

4. Testimony: Mr. Hoyt asserts that "Cody apparently has no experience in the production of APIs from biological sources and is apparently not equipped to execute these processes." Page 6, lines 16-18.

9

Objection: This is speculation by Mr. Hoyt. The opinion of an employee of one of Cody's competitors with no personal knowledge of Cody's facilities, equipment or resources is irrelevant.

5. Testimony: Mr. Hoyt asserts that "Cody's apparently limited experience in the production of synthetic APIs does not necessarily transfer to the isolation and purification of alkaloids or PSC." Page 6, lines 18-20.

Objection: This is speculation by Mr. Hoyt. Mr. Hoyt has no personal knowledge of Cody's experience with, or development of, any manufacturing processes. Mr. Hoyt is not qualified as an expert, but is instead merely an employee of Cody's competitor company. As such, his opinion is irrelevant.

6. Testimony: Mr. Hoyt relies on a three-year-old Billings Gazette newspaper article to assert that "Cody's earlier public statements regarding its level of pharmaceutical regulatory and manufacturing experience underscore concerns about whether it has sufficient resources to be an NRM importer." Page 8, line 22- Page 9, lines 1-4.

Objection: Testimony based on newspaper articles is inherently unreliable. In addition, Mr. Hoyt's assertion that there are "concerns" about whether Cody has sufficient resources to be an NRM importer is speculation. Moreover, his personal opinion as to these purported "concerns" is irrelevant. Mr. Hoyt is merely Vice President of Business Development at Cody's competitor company. Accordingly, hearsay from newspaper articles should not be admitted as support for Mr. Hoyt's irrelevant and speculative opinion.

7. Testimony: Mr. Hoyt asserts that "it is apparent that, in spite of its earlier efforts, Cody still has not invested the resources necessary to meet fundamental pharmaceutical industry compliance requirements." Page 9, line 5-7.

Objection: This is speculation by Mr. Hoyt. Mr. Hoyt has no personal knowledge of Cody's current "investment" in its facilities nor of its current ability to manufacture in compliance with industry requirements. Mr. Hoyt has never visited Cody's facilities, and is not testifying as an expert, but as an employee of one of Cody Labs' competitors. Thus, his opinion as to what "is apparent" is irrelevant.

8. Testimony: Throughout paragraph 15 of his testimony, Mr. Hoyt asserts that Cody's purported "difficulties" in complying with industry requirements "*may* be compounded by the attempt to construct and operate a chemical plant with apparent limited access to sufficient capital." Page 9, lines 8-10 (emphasis added). Moreover, Mr. Hoyt further asserts that Cody's location "*may* limit the installation of infrastructure and chemical process unit operations" that can manufacture in compliance with industry requirements. Page 9, lines 10-14 (emphasis added). Mr. Hoyt asserts that Cody "*may* also lack capital to construct adequate security systems to prevent diversion." Page 9, lines 14-16 (emphasis added).

Objection: This is all speculation by Mr. Hoyt. He has no personal knowledge of *any* of these claims. Mr. Hoyt is not testifying as an expert in any of these matters. Mr. Hoyt has never visited Cody's facilities; he has no personal knowledge of Cody's access to capital; he has no personal knowledge of Cody's physical plant; and he has no personal knowledge of the status of Cody's manufacturing capabilities. Mr. Hoyt is the Vice President of Business Development at Cody's competitor company, and thus his opinion on these matters is irrelevant.

9. Testimony: Mr. Hoyt asserts that his opinion as to Cody's purported "limited manufacture of controlled substances" is based on a three-year-old Billings Gazette newspaper article. Page 9, lines 16-20.

11

Objection: Testimony based on newspaper articles is inherently unreliable. For the reasons stated above, such articles should not be admitted as support for Mr. Hoyt's irrelevant and speculative opinion.

### C.    Testimony of Michael J. Collins of Mallinckrodt

Mr. Collins is Senior Vice President of Mallinckrodt Pharmaceuticals, and President of Mallinckrodt Pharmaceuticals Division. Cody Labs makes the following objections to Mr. Collins' testimony and moves to strike, as follows:

1. Testimony: Mr. Collins asserts a variety of purported facts in Section IV of his testimony, entitled "Mallinckrodt's Commitment to the Public Interest in Promoting Security of Supply Supporting Traditional Growing Countries and Preventing Diversion." Page 6, line 15 – Page 8, line 5.

Objection: All testimony in Section IV of Mr. Collins' testimony is irrelevant. Mallinckrodt's purported commitment to the public interest is irrelevant to Cody's importer application. The relevant consideration is whether the applicant's (Cody Labs') registration, not a company already registered, is in the public interest. *See* 21 U.S.C. § 958 (a). The relevant consideration for Mallinckrodt's participation in this hearing is whether Mallinckrodt can establish itself as a "bulk manufacturer of the substance" that Cody Labs is applying to import. 21 U.S.C. § 958(i). However, Mallinckrodt is not a bulk manufacturer of the substances that Cody seeks to import, namely opium, poppy straw, and poppy straw concentrate. Especially given that it cannot establish itself as such a manufacturer, Mr. Collins' testimony as to Mallinckrodt's purported commitment to the public interest is irrelevant.

Respectfully submitted,

Terence J. Lynam

Terence J. Lynam
Suzanne E. Ashley

12

Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
202.887.4045
202.887.4288 Facsimile

*Attorneys for Cody Laboratories, Inc.*

December 29, 2006

13

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused a copy of the foregoing to be served via

facsimile and regular mail on the following:

Wayne Patrick
Office of the Chief Counsel
Drug Enforcement Administration
Washington, DC 20537

Steven J. Poplawski (Counsel for Mallinckrodt, Inc.)
Scott M. Badami
Bryan Cave LLP
700 – 13th Street, NW – Suite 600
Washington, DC 20005-3960

Wayne H. Matelski (Counsel for Penick Corporation)
Arent Fox Kintner Plotkin & Kahn, PLLC
1050 Connecticut Avenue, NW
Washington, DC 20036-5339

Andrew D. Schau (Counsel for Noramco of Delaware, Inc.)
Thomas C. Morrison
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

John A. Gilbert, Jr. (Counsel for Noramco, Inc.)
Hyman, Phelps & McNamara PC
700 - 13th Street, NW
Washington, DC 20005

Peter R. Mathers (Counsel for Rhodes Technologies, Inc.)
Kleinfeld, Kaplan & Becker LLP
1140 – 19th Street, NW
Washington, DC 20036

12/29/06
_____
Date

_Terence J. Lynam_
Terence J. Lynam

# EXHIBIT 2

Arent Fox LLP / **Washington, DC** / New York, NY / Los Angeles, CA

# Arent Fox

**Wayne H. Matelski**
202.857.6340 DIRECT
202.857.6395 FAX
matelski.wayne@arentfox.com

January 23, 2007

VIA FEDERAL EXPRESS

Michelle Leonhart
Deputy Administrator
Drug Enforcement Administration
Lincoln Place-West
Room 12058
700 Army Navy Drive
Arlington, VA 22202

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control
Drug Enforcement Administration
Lincoln Place -East
Room 6295
600 Army Navy Drive
Arlington, VA 22202

Re:     <u>Application of Rhodes Technologies inc. for Registration as an Importer of Raw
Opium and Concentrate of Poppy Straw (DEA Docket No. 06-57)</u>

<u>Application of Cody Laboratories, Inc. for Registration as an Importer of Raw
Opium and Concentrate of Poppy Straw (DEA Docket No. 06-53)</u>

Dear Deputy Administrator Leonhart and Deputy Assistant Administrator Rannazzisi:

Penick Corporation ("Penick"), Mallinckrodt, Inc. ("Mallinckrodt") and Noramco of
Delaware, Inc. ("Noramco") - the requestors of hearings in the above-captioned matters
(hereinafter, collectively "Requestors") - are writing to respond to the January 10, 2007
letter to you from Peter R. Mathers, Esq. and Jennifer A. Davidson, Esq., counsel for
Rhodes Technologies ("Rhodes"). The January 10 letter appears to seek a ruling on an
issue currently pending before the Honorable Mary Ellen Bittner, Administrative Law

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
T 202.857.6000   F 202.857.6395

1675 Broadway
New York, NY 10019-5820
T 212.484.3900   F 212.484.3990

445 S. Figueroa Street, Suite 3750
Los Angeles, CA 90071-1601
T 213.629.7400   F 213.629.7401

# Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 2

Judge in *In re Rhodes Technologies,* Docket No. 06-57.  Citing no authority for the proposition and ignoring the rules governing interlocutory appeals in DEA administrative proceedings like this one, that letter states Rhodes' belief that "only the Deputy Administrator and the Deputy Assistant Administrator have the proper legal authority to rule on these issues."[1]

In its correspondence, Rhodes argues that DEA is proceeding with "legally unnecessary" importation registration hearings in both the above-referenced matters.  Rhodes therefore asserts that it is somehow entitled to cancellation of these "unauthorized hearing proceedings."

The Requestors are only too familiar with the arguments Rhodes makes on these issues.  Specifically, in 2000, Penick, in the context of its own application for registration as an importer of Schedule II controlled substances, filed a Motion to Strike the Comments, Objections and Requests for a Hearing filed by the then-importers of the substances at issue.  *See* Penick Corporation's Motion to Strike Comments, Objections, and Requests for Hearing Submitted by Mallinckrodt, Noramco, and Organichem ("Motion to Strike"), *In re Penick Corp.*, DEA Docket No. 01-03 (Dec. 19, 2000).

In its Motion to Strike, Penick asserted essentially the same arguments that Rhodes makes in its filings here - that none of the entities requesting a hearing on Penick's application was entitled to such a hearing.  Following full briefing on the issues, Judge Bittner issued an extensive opinion.  *See* Memorandum to Counsel and Rulings on Motions, *In re Penick Corp.*, DEA Docket No. 01-03 (April 13, 2001), a copy of which is attached as Exhibit 2.  She found, *inter alia*, that "the agency has decided to afford a right to a hearing on any application other than those filed pursuant to Section 952(a)(2)(A)."  *Id.* at 22.  In so doing, Judge Bittner cited no fewer than twenty instances in which DEA had afforded the opportunity for such a hearing.  *Id.* at nn. 67 & 68.

Judge Bittner also squarely addressed the issue of which Rhodes now complains, recognizing the argument that DEA's noticing of applications in the Federal Register provides the opportunity to request the hearing offered in the notice: "[B]y publishing

---

[1] In a separate January 10, 2007 letter to Judge Bittner, Rhodes raises the same issue with regard to the *Cody* matter, notwithstanding Judge Bittner's July 12 ruling on this very issue.  *See* Memorandum to Counsel, *In re Cody Laboratories, Inc.*, DEA Docket No. 06-53 (July 12, 2006), a copy of which is attached as Exhibit 1.

# Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 3

notices of applications filed pursuant to Section 952(a)(1), DEA at least implicitly affords a hearing to manufacturers who are registered to import, rather than to manufacture, the substances the applicant seeks to import." *Id.* at 22. After exhaustively examining the statutory and regulatory language, legislative and regulatory history, as well as DEA practice regarding these hearings, Judge Bittner concluded by finding that DEA "has the discretionary authority to afford that hearing right and that it has done so in other proceedings as well as this one." *Id.* at 23. Therefore, Judge Bittner denied Penick's motion, allowing the hearing to move forward. *Id.* The Deputy Administrator's final decision on Penick's importer registration, issued after the hearing on the merits of Penick's application, specifically adopted the Administrative Law Judge's "well-reasoned ruling" on this matter. *See* Penick Corporation Inc., Grant of Registration to Import Schedule II Substances, 68 Fed. Reg. 6947, 6948 (Feb. 11, 2003).

In the now pending *Cody* matter, Rhodes filed a statement of position making essentially the same argument Penick had made six years earlier - that none of the companies that had requested a hearing on Cody's application to import had the right to do so under the Controlled Substances Act ("CSA") or its implementing regulations. [Rhodes'] Statement of Position, *In re Cody Laboratories, Inc.*, DEA Docket No. 06-53 (July 6, 2006).[2] In her ruling on Rhodes' motion in *Cody*, Judge Bittner implicitly recognized the legitimacy of the hearing by directly addressing the terms under which Rhodes could participate in the hearing and otherwise taking procedural steps to move the hearing forward. *See* Exhibit 1, Memorandum to Counsel, *In re Cody Laboratories, Inc.*, DEA Docket No. 06-53 (July 12, 2006).

But even before Rhodes filed its "Statement of Position" in *Cody*, it had made the same arguments to Judge Bittner on June 15, 2006 in the context of its own hearing.[3] The Requestors submitted a Joint Response to that argument, pointing out that Rhodes'

---

[2] It should be noted that Rhodes made this argument only briefly in the context of a broader attempt to justify why it should be allowed to participate in a hearing on Cody's application (should it go forward) notwithstanding Rhodes' failure to either request such a hearing or to have filed a timely notice of appearance in the hearing once it had been requested by another company. *Id.*

[3] Rhodes has made these arguments elsewhere. *See* correspondence from Mr. Mathers and Ms. Davidson to Deputy Administrator Leonhart and Deputy Assistant Administrator Rannazzisi of June 15, 2006, July 14, 2006, November 13, 2006 and January 10, 2007, in addition to correspondence from Mr. Mathers and Ms. Davidson to Judge Bittner of June 15, 2006, as well as Rhodes' July 12, 2006 Reply to Joint Response of Requestors Regarding the Authority of the Office of Administrative Law Judges to Initiate a Hearing. *In re Rhodes Technologies*, DEA Docket No. 06-57.

Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 4

arguments offered nothing new. *See* Joint Response of Mallinckrodt, Noramco, and
Penick Regarding the Authority of the Office of Administration Law Judges to Initiate a
Hearing, *In re Rhodes Technologies.*, DEA Docket No. 06-57 (July 5, 2006), a copy of
which is attached as Exhibit 3. We will not repeat the arguments made in the Joint
Response to any great extent here, but suffice it to say that Rhodes' arguments contravene
the CSA and ignore both the statutory and historical differences between manufacturers
and importers. As discussed above, long-standing DEA precedent supports the
participation of existing registered importers in the process of determining whether
granting new applicants registration to import NRMs is in the public interest. As Judge
Bittner stated in *In re Houba, Inc.*, "there is no purpose to publishing the notice of
application and affording the opportunity to object, comment, or request a hearing, unless
DEA intends that other importers avail themselves of that opportunity." *See*
Memorandum to Counsel, *In re Houba, Inc.*, DEA Docket No. 02-06 at 16 (April 15,
2002), a copy of which is attached as Exhibit 4.

Not only is Rhodes' position substantively incorrect but its manner of raising the issue is
procedurally incorrect. Rhodes is apparently attempting to have the Deputy
Administrator accept an interlocutory appeal of the Court's decision to proceed with the
*Cody* hearing. The procedure for such interlocutory relief is set forth at 21 CFR
§ 1316.62. An interlocutory appeal can only occur when the presiding officer, in this case
Judge Bittner, certifies:

> in writing that the allowance of an interlocutory appeal is
> clearly necessary to prevent exceptional delay, expense or
> prejudice to any party or substantial detriment to the public
> interest. If an appeal is allowed, any party in the hearing
> may file a brief in quintuplicate with the Administrator
> within such period that the presiding officer directs. No
> oral argument will be heard unless the Administrator
> decides otherwise.

21 CFR § 1316.62. Absent the required certification of her decision on the issue to the
Administrator in accordance with § 1316.62 and subsequent briefing of the issue as
directed by Judge Bittner, the issue is not properly before the Deputy Administrator, and
the Deputy Administrator must wait until completion of the hearing process before
addressing the issue, just as the DEA did previously in *Penick*. Given that Judge Bittner
has not ruled yet in *Rhodes*, there is similarly no basis for the Deputy Administrator to

# Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 5

take interlocutory jurisdiction over the hearing issue in that proceeding as the required certification necessary for such interlocutory relief under § 1316.62 has not occurred. Thus, Rhodes' letter writing campaign ignores the administrative hearing process and Judge Bittner's authority under 21 CFR § 1316.62.

Since the passage of the CSA in 1970, DEA has always provided hearings on NRM importer registration applications when requested by then-registered NRM importers and processors. Such hearings were held whether or not DEA took a position on the application or whether DEA took an active part in the proceedings. This is consistent with agency statements that applications for importer registrations are subject to greater limitations than manufacturer applications. Receiving evidence from interested parties provided in an administrative hearing is arguably the best way for DEA to obtain important information regarding industry practices. The hearing also provides access to the necessary expertise in order to fully evaluate an application for importation of NRMs. Under the CSA, DEA is required to take into consideration the public interest factors, and the hearing process enables DEA to take full advantage of the resources and experience of the NRM industry in applying these factors to specific applicants. In addition, DEA has utilized the hearing process to gather and evaluate information relevant to a determination of adequate competition and technological advances for NRM importer registrations. Any change to this practice should be subject to public notice, and provide interested and affected parties the opportunity to comment.

Rhodes attempts to disguise its warmed over arguments by citing DEA's prehearing memorandum in *Cody* and DEA's recent decision in *Mallinckrodt, see* 71 Fed. Reg. 65134 (Nov. 7, 2006). Neither attempt overcomes DEA's governing precedent nor Rhodes' failure to follow proper procedure in attempting to short circuit the interlocutory appeal process. First, with regard to the government's statement in the prehearing memorandum that "It is the agency position that a hearing is not required in the current posture of this case," the statement contains no factual or legal basis for the Agency's position nor does it attempt to argue and articulate why a hearing is not appropriate in *Cody*. Given the precedent in *Penick*, DEA cannot unilaterally change its policy of conducting hearings on applications to import based solely on the unsupported statement of its counsel in a pleading. Second, with regard to the *Mallinckrodt* decision, DEA correctly found that a hearing in that proceeding was not appropriate. However, in so doing, it made no effort to say nor did it need to suggest that *Penick* was not a valid precedent. Mallinckrodt's application was for a renewal of its right to import NRMs. Mallinckrodt has been registered to import NRMs under the CSA since the statute's

Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 6

inception. Thus, DEA can come to a different conclusion with regard to the need for hearings on renewal registrants than it can with regard to new registrants. In any case, because the *Mallinckrodt* decision makes no mention of the *Penick* precedent and the situation of Mallinckrodt is distinguishable from new applicants such as Rhodes and Cody, the *Mallinckrodt* decision cannot be used to conclude that the DEA has changed its view of the need for hearings on new registrants to import NRMs.

While Rhodes' substantively and procedurally defective letter-writing campaign provides no basis for delaying the *Cody* proceeding, the same is not true of the pending appeal by Penick of DEA's grant of an importer registration to Chattem Chemicals, Inc. *See Penick Corp. v. U.S. Drug Enforcement Administration*, No. 06-1105 (D.C. Cir. Mar. 24, 2006). The Court of Appeals ruling could have an impact on the pending Cody and Rhodes importer applications. Accordingly, should Rhodes and Cody agree, the Requestors would agree to a stay of all matters related to the Cody and Rhodes importer applications until such time as the Court of Appeals has issued its final decision. Absent this agreement, Requestors Penick Corporation, Mallinckrodt, Inc. and Noramco of Delaware, Inc. maintain that the *Cody* and *Rhodes* hearings should proceed in their normal course, that Rhodes' argument as expressed in its January 10 correspondence be rejected, and that the Deputy Administrator address this issue (should she choose to do so) in the context of any exceptions to Judge Bittner's final rulings in those cases.

Respectfully submitted,

Wayne H. Matelski
Counsel for Penick Corporation

Arent Fox

Michelle Leonhart
Joseph T. Rannazzisi
January 23, 2007
Page 7

cc (via First Class Mail):

     The Hon. Mary Ellen Bittner
     Wayne M. Patrick, Esq.
     Terence J. Lynam, Esq.
     Steven J. Poplawski, Esq.
     Andrew D. Schau, Esq.
     Peter R. Mathers, Esq.
     Jennifer A. Davidson, Esq.

RPP/194363.3

# EXHIBIT 3

filed for the purpose of extending the Act's provisions limiting the recovery of antitrust plaintiffs to actual damages under specified circumstances. Specifically, Keithley Instruments, Inc., Solon, OH; and PLX Technology, Sunnyvale, CA have been added as parties to this venture. Also, Mapsuka Industries Co., Ltd., Taipei, TAIWAN has withdrawn as a party to this venture.

No other changes have been made in either the membership or planned activity of the group research project. Membership in this group research project remains open, and PXI Systems Alliance, Inc. intends to file additional written notifications disclosing all changes in membership.

On November 22, 2000, PXI Systems Alliance, Inc. filed its original notification pursuant to Section 6(a) of the Act. The Department of Justice published a notice in the **Federal Register** pursuant to Section 6(b) of the Act on march 8, 2001 (66 FR 13971).

The last notification was filed with the Department on October 5, 2006. A notice was published in the **Federal Register** pursuant to Section 6(b) of the Act on November 22, 2006 (71 FR 67642).

Patricia A. Brink,

*Deputy Director of Operations, Antitrust Division.*

[FR Doc. 07–319 Filed 1–24–07; 8:45 am]

BILLING CODE 4410–11–M

## DEPARTMENT OF JUSTICE

### Drug Enforcement Administration

### Importer of Controlled Substances; Correction to Notice of Application

The Drug Enforcement Administration (DEA) is hereby correcting a notice of application that appeared in the **Federal Register** on January 23, 2006 (71 FR 3545). That document announced the application of Cody Laboratories, Inc., to be registered as an importer of raw opium, poppy straw, and concentrate of poppy straw.

The January 23, 2006, notice of application incorrectly stated that "[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture such basic classes of controlled substances may file comments or objections to the issuance of the proposed registration and may, at the same time, file a written request for a hearing on such application pursuant to 21 CFR 1301.43 and in such form as prescribed by 21 CFR 1316.47." Correctly stated, under the Controlled Substances Act (CSA) and DEA

regulations, applications to import narcotic raw materials, including raw opium, poppy straw, and concentrate of poppy straw, are not required to be published in the **Federal Register**. Further, the notice of application, although not required to be published at all, should have stated that "bulk manufacturers" of raw opium, poppy straw, or concentrate of poppy straw may file a written request for a hearing. As explained below, since there are no domestic bulk manufacturers of narcotic raw materials registered with DEA, no registrant has a statutory or regulatory right to a hearing on the application. For the reasons set forth therein, I correct the Notice of Application dated January 23, 2006. I direct the Administrative Law Judge to remove from the agency's administrative docket the hearing on the application of Cody Laboratories, Inc. to be registered as an importer of narcotic raw materials.

Dated: January 18, 2007.

Michele M. Leonhart,

*Deputy Administrator.*

[FR Doc. E7–1052 Filed 1–24–07; 8:45 am]

BILLING CODE 4410–09–P

## DEPARTMENT OF JUSTICE

### Drug Enforcement Administration

### Importer of Controlled Substances; Correction to Notice of Application

The Drug Enforcement Administration (DEA) is hereby correcting a notice of application that appeared in the **Federal Register** on April 17, 2006 (71 FR 20729). That document announced the application of Rhodes Technologies to be registered as an importer of raw opium and concentrate of poppy straw. This is the second correction to the original notice of application. This document augments the correction which was published in the **Federal Register** on May 22, 2006 (71 FR 29354).

The April 17, 2006, notice of application incorrectly stated that "[a]ny manufacturer who is presently, or is applying to be, registered with DEA to manufacture such basic classes of controlled substances may file comments or objections to the issuance of the proposed registration and may, at the same time, file a written request for a hearing on such application pursuant to 21 CFR 1301.43 and in such form as prescribed by 21 CFR 1316.47." Correctly stated, under the Controlled Substances Act (CSA) and DEA regulations, applications to import

narcotic raw materials, including raw opium and concentrate of poppy straw, are not required to be published in the **Federal Register**. Further, the notice of application, although not required to be published at all, should have stated that "bulk manufacturers" of raw opium or concentrate of poppy straw may file a written request for a hearing. As explained below, since there are no domestic bulk manufacturers of narcotic raw materials registered with DEA, no registrant has a statutory or regulatory right to a hearing on the application.

In response to the notice, several importers of narcotic raw materials who also hold manufacturing registrations (but not as "bulk manufacturers" of narcotic raw materials) requested a hearing on the application. DEA's Administrative Law Judge (ALJ) accepted the requests for hearings and placed the case on DEA's administrative hearing docket. This correction notifies the applicant, the public, and those importers/manufacturers that requested a hearing that DEA is denying the requests for hearing and dismissing the case on the agency's administrative docket.

### Statutory and Regulatory Provisions

As set forth in 21 U.S.C. 958(i), the Attorney General (by delegation, the Administrator and Deputy Administrator of DEA)[1] shall, prior to issuing an importer registration to a bulk manufacturer of a controlled substance in schedule I or II, and prior to issuing a regulation under 21 U.S.C. 952(a) authorizing the importation of such a substance, provide "manufacturers holding registrations for the *bulk manufacture of the substance* an opportunity for a hearing." (Emphasis added.) Thus, the CSA contemplates that only "bulk manufacturers" shall be entitled to hearing on an application to import a schedule I or II controlled substance and, further, that only those who are registered to bulk manufacture the particular substance that the applicant seeks to import. Accordingly, if no one is registered to bulk manufacture the substance that the applicant seeks to import, no one is entitled to a hearing on that application.

DEA's registration database confirms that no person holds a registration as a bulk manufacturer of raw opium, concentrate of poppy straw, or any of the other narcotic raw materials listed in 21 U.S.C. 952(a)(1).[2] Accordingly, the

---

[1] 21 U.S.C. 871(a); 28 CFR 0.100(b) and 0.104, appendix to subpart R, sec. 12.

[2] When applying for registration, manufacturers are required to complete DEA Form-225, which

Continued

CSA provides no right to a hearing to any person seeking to challenge the application of another to become registered to import such narcotic raw materials.

Consistent with the CSA, the DEA regulations provide that the only persons who are entitled to a hearing on an application for a registration to import a schedule I or II controlled substance are those who are either "registered as a bulk manufacturer of that controlled substance" or an "applicant therefor." 21 CFR 1301.34(a).[3]

In sum, neither the CSA nor the DEA regulations provide a right to a hearing for anyone seeking to contest the application of Rhodes Technologies to import narcotic raw material.

### Historical Agency Practice and Other Statutory Considerations

DEA is aware that the agency has, in some prior cases of applications to import narcotic raw materials, granted requests for hearings made by persons that were not bulk manufacturers of the narcotic raw material—despite the fact that no such hearing right is contemplated by the governing statute or implementing regulations. *See, e.g., Penick Corp.; Importation and Manufacture of Controlled Substances, Objections, Requests for Hearing, and Hearing,* 42 FR 82760 (1980); *Mallinckrodt, Inc.; Approval of Registration,* 46 FR 24747 (1981); *Johnson Matthey, Inc.; Conditional Grant of Registration to Import Schedule II Substances,* 67 FR 39041 (2002); *Penick Corporation, Inc.; Grant of Registration to Import Schedule II Substances,* 68 FR 6947, 6948 (2003); *Chattem Chemicals, Inc.; Grant of Registration to Import Schedule II Substances,* 71 FR 9834 (2006). In these past cases, the agency did not state that such non-bulk-manufacturers were entitled to a hearing under 21 U.S.C. 958(i) or 21 CFR 1301.34(a). Rather, the agency either granted the hearing without explanation or did so based on what it termed its "discretionary authority." *See, e.g., Penick Corporation, Inc.; Grant of Registration to Import Schedule II Substances,* 68 FR 6947, 6948 (2003). Without addressing whether the agency indeed has the

theoretical legal authority to grant such hearing requests, I now conclude that the most sound reading of the statute and regulations is that which limits the right to a hearing to those situations in which Congress expressly provided such a right.

As stated above, 21 U.S.C. 958(i), by its plain terms, gives the right to request a hearing *not* in the case of all applications for a registration to import, but only in those in which the applicant for the import registration is a "bulk manufacturer" and only where the person seeking the hearing is a "bulk manufacturer" of the substance the applicant is seeking to import. Because there are no registered bulk manufacturers of narcotic raw materials,[4] the facts triggering the right to a hearing under section 958(i) are not present in cases in which the applicant for an import registration is seeking to import narcotic raw materials under section 952(a)(1). In contrast, the facts needed to invoke the hearing right of section 958(i) will be present when the applicant is seeking to import the substances referred to in section 952(a)(2), since there are registered bulk manufacturers of the substances referred to in section 952(a)(2) (substances which are not narcotic raw materials).[5]

Congress could have extended the hearing right under 958(i) to importers of narcotic raw materials. That it instead chose to limit that right to bulk manufacturers indicates a determination on its part that extending the hearing right to others is not necessary to advance the goals of the CSA. Among other considerations, invocation of the hearing right by a competitor can add considerable time (months and sometimes years) to the process by which the agency determines whether to grant the application. An interested registrant could ask for a hearing simply to delay a competitor's entry into the market—particularly given that DEA has not promulgated any criteria for deciding whether to grant these types of hearing requests. Such a delay would tend to run counter to the obligation of

an agency under the Administrative Procedure Act requires to conclude adjudications "with due regard to the convenience and necessity of the parties * * * and within a reasonable time." 5 U.S.C. 555(b). Moreover, if DEA were to maintain a policy (not contemplated by the CSA) whereby a competitor could simply request a hearing without making any showing that the hearing either would assist the agency in deciding whether to grant the application or otherwise advance the goals of the CSA, it would be difficult to envision how the agency could act on such hearing requests other than on arbitrary basis. Basic principles of fairness dictate against such an outcome.

Of course, the consideration of delay to the applicant also exists when a *bulk manufacturer* seeks a hearing on the application of a potential competitor as allowed under section 958(i). However, that Congress expressly provided for a hearing right in such circumstances indicates that Congress weighed the consideration of delay and, on balance, determined the goals of the CSA were advanced by providing a hearing right in such circumstances. Again, that Congress expressed clear criteria as to when the hearing right applied reflects a clear delineation by Congress as to when such hearing right does—or does not—advance the overall goals of the Act.

The mere fact that the agency has followed a procedural practice in the past does not, by itself, compel that the agency repeat the procedure in perpetuity. Finding no valid justification for the past practice, and finding such practice inconsistent with the particular criteria for a hearing rights set forth in the CSA and implementing regulations, I decline to follow this practice.

It should be emphasized, however, that this decision to disallow a hearing right beyond that stated in the statute or regulations by no means should be construed as an indication that this application will be approved without the appropriate scrutiny. As mandated by the CSA, DEA will—prior to deciding whether to issue an order to show cause to deny this application—evaluate the application in accordance with the applicable statutory criteria (21 U.S.C. 952(a)(1) and 958(a)). Section 958(a) requires DEA to evaluate the application under the six public interest factors set forth in 21 U.S.C. 823(a). *See Penick Corporation,* 68 FR 6947 (2003); *Roxane Laboratories, Inc.,* 63 FR 55891 (1998).

---

[3] Moreover, as set forth in 21 CFR 1301.34(a), the right to a hearing is limited to cases in which the applicant is seeking to import a controlled substance pursuant to 21 U.S.C. 952(a)(2)(B).

[4] Since well before the CSA was enacted (beginning with the Narcotic Drugs Import and Export Act of 1922), it has been the policy of the United States (reflected in legislation enacted by Congress) to favor the importation of narcotic raw materials for conversion in the United States into finished narcotic drug products over domestic production of the raw materials and over the importation of processed narcotic materials and finished narcotic products. This is currently reflected in part by in 21 U.S.C. 952(a) and, in particular, by comparing subsection 952(a)(1) with subsection 952(a)(2) (the latter being more restrictive than the former).

[5] Section 958(i) expressly excludes from the hearing right applications pursuant to section 952(a)(2)(A) (emergency situations).

---

requires the applicant to specify the nature of the proposed manufacturing activity. The categories include, among others, "bulk synthesis/extraction" and "dosage form manufacture." Likewise, the registration database maintained by DEA indicates the specific type of manufacturing activity that is authorized by each registration.

**Conclusion**

For the reasons and in the manner set forth above, I correct the Notice of Application dated April 17, 2006. I direct the ALJ to remove from the agency's administrative docket the hearing on the application of Rhodes Technologies to register as an importer of narcotic raw materials.

Dated: January 18, 2007.

**Michele M. Leonhart,**

*Deputy Administrator.*

[FR Doc. E7–1053 Filed 1–24–07; 8:45 am]

BILLING CODE 4410–09–P

---

**DEPARTMENT OF LABOR**

**Employment and Training Administration**

**[TA–W–60,627]**

**Advanced Technology Corp., Geneva, OH; Notice of Termination of Investigation**

Pursuant to Section 221 of the Trade Act of 1974, as amended, an investigation was initiated on December 18, 2006 in response to a worker petition filed by the United Steelworkers, Local 905L on behalf of workers of Advanced Technology Corp., Geneva, Ohio.

The petitioner has requested that the petition be withdrawn. Consequently, the investigation has been terminated.

Signed at Washington, DC this 17th day of January, 2007.

**Linda G. Poole,**

*Certifying Officer, Division of Trade Adjustment Assistance.*

[FR Doc. E7–1075 Filed 1–24–07; 8:45 am]

BILLING CODE 4510–30–P

---

**DEPARTMENT OF LABOR**

**Employment and Training Administration**

**Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and Alternative Trade Adjustment Assistance**

In accordance with Section 223 of the Trade Act of 1974, as amended (19 U.S.C. 2273) the Department of Labor herein presents summaries of determinations regarding eligibility to apply for trade adjustment assistance for workers (TA–W) number and alternative trade adjustment assistance (ATAA) by (TA–W) number issued during the period of January 1 through January 5, 2007.

In order for an affirmative determination to be made for workers of a primary firm and a certification issued regarding eligibility to apply for worker adjustment assistance, each of the group eligibility requirements of Section 222(a) of the Act must be met.

I. Section (a)(2)(A) all of the following must be satisfied:

A. A significant number or proportion of the workers in such firm's, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated;

B. The sales or production, or both, of such firm or subdivision have decreased absolutely; and

C. Increased imports of articles like or directly competitive with articles produced by such firm or subdivision have contributed importantly to such workers' separation or threat of separation and to the decline in sales or production of such firm or subdivision; or

II. Section (a)(2)(B) both of the following must be satisfied:

A. A significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated;

B. There has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

C. One of the following must be satisfied:

1. The country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;

2. The country to which the workers' firm has shifted production of the articles to a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or

3. There has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision.

Also, in order for an affirmative determination to be made for secondarily affected workers of a firm and a certification issued regarding eligibility to apply for worker adjustment assistance, each of the group eligibility requirements of Section 222(b) of the Act must be met.

(1) Significant number or proportion of the workers in the workers' firm or an appropriate subdivision of the firm

have become totally or partially separated, or are threatened to become totally or partially separated;

(2) The workers' firm (or subdivision) is a supplier or downstream producer to a firm (or subdivision) that employed a group of workers who received a certification of eligibility to apply for trade adjustment assistance benefits and such supply or production is related to the article that was the basis for such certification; and

(3) Either—

(A) The workers' firm is a supplier and the component parts it supplied for the firm (or subdivision) described in paragraph (2) accounted for at least 20 percent of the production or sales of the workers' firm; or

(B) A loss or business by the workers' firm with the firm (or subdivision) described in paragraph (2) contributed importantly to the workers' separation or threat of separation.

In order for the Division of Trade Adjustment Assistance to issue a certification of eligibility to apply for Alternative Trade Adjustment Assistance (ATAA) for older workers, the group eligibility requirements of Section 246(a)(3)(A)(ii) of the Trade Act must be met.

1. Whether a significant number of workers in the workers' firm are 50 years of age or older.

2. Whether the workers in the workers' firm possess skills that are not easily transferable.

3. The competitive conditions within the workers' industry (*i.e.*, conditions within the industry are adverse).

**Affirmative Determinations for Worker Adjustment Assistance**

The following certifications have been issued. The date following the company name and location of each determination references the impact date for all workers of such determination.

The following certifications have been issued. The requirements of Section 222(a)(2)(A) (increased imports) of the Trade Act have been met.

*None.*

The following certifications have been issued. The requirements of Section 222(a)(2)(B) (shift in production) of the Trade Act have been met.

*TA–W–60,534; Ceramaspeed, Inc., Maryville, TN: December 4, 2005.*

The following certifications have been issued. The requirements of Section 222(b) (supplier to a firm whose workers are certified eligible to apply for TAA) of the Trade Act have been met.

*None.*

The following certifications have been issued. The requirements of Section